VENNER *v.* MICHIGAN RAILROAD COMMISSION.

RAILROADS—MICHIGAN RAILROAD COMMISSION—POWERS—AUTHOR-
IZING ISSUE OF CAPITAL STOCK—STATUTES.

> The Michigan railroad commission has authority, under Act
> No. 259, Pub. Acts 1915 (2 Comp. Laws 1915, § 8161), to
> authorize a railroad corporation to issue capital stock to
> reimburse it for money spent out of its income from time
> to time for property added to its assets; it being too
> narrow a construction of the statute to hold that such
> authority should be secured before the expenditures are
> made. BIRD, C. J., dissenting.

Certiorari by Clarence H. Venner and another to
review an order of the Michigan railroad commission
granting permission to the New York Central Rail-
road Company to issue bonds. Submitted October 9,
1917. (Docket No. 58.) Writ dismissed May 29,
1919.

*Orla B. Taylor* (*Elijah N. Zoline,* of counsel), for
appellants.

*Alexander J. Groesbeck,* Attorney General (*Robert
J. Cary, Frank E. Robson,* and *Samuel H. Kelley,* of
counsel), for appellee.

BIRD, C. J. (*dissenting*). The New York Central
Railroad Company filed its application with the Michi-
gan railroad commission, praying permission to issue
$25,000,000 of new capital stock to reimburse its treas-
ury for expenditures already made on capital account.
Accompanying the petition was a schedule of the ex-
penditures which it desired capitalized.

The plaintiffs, as stockholders of that company, ap-
peared before the commission and opposed the grant-
ing of the order prayed for. A hearing followed in
which plaintiffs participated but at the conclusion

See note in 38 L. R. A. 616.

thereof their objections were overruled and the prayer of the petition granted. Later, upon application of plaintiffs, this court issued a writ of certiorari to review the proceedings.

1. The objections to the order of the commission which appear in the affidavit for the writ are not confined to the items contained in the schedule, but go further and question the validity of the organization of the New York Central Railroad Company, its consolidation with the Lake Shore & Michigan Southern Railway Company, and its investments in stocks and bonds of other railroads.

It may be well at the outset to say that we think the questions raised by plaintiffs affecting the legality of the organization of the New York Central Railroad Company and its consolidation with the Lake Shore & Michigan Southern Railway Company are not appropriate questions for the commission upon this inquiry. Neither do we think the legality of its investments heretofore made is a proper inquiry for the commission. The Michigan railroad commission is not a court but an administrative board with supervisory powers. Had it concluded that plaintiffs' contentions were right in respect to these matters, it could have made no enforceable order concerning them. How far, however, the commission may consider the investments of an applicant in determining whether added capital is reasonably required for the purposes of the corporation, we need not inquire at this time, as the appeal must be disposed of upon other grounds. The questions with which the commission are concerned are those arising out of the petition filed. The New York Central Railroad Company is asking permission to capitalize certain expenditures and investments paid for, principally, out of income within five years preceding July, 1916. If the commission has jurisdiction in the premises its duty is to examine the items and

determine whether the money was devoted to lawful purposes and whether they were reasonably required for the purposes of the corporation.

2. We are confronted at the outset with a serious question raised by the plaintiffs and one affecting the power of the commission to make any order of approval. Plaintiffs assert that the commission is without authority to make any order in the premises because from the petition it appears that the expenditures have already been made and that the commission has no power to approve securities to reimburse the treasury of the corporation after the expenditures have been made. A solution of this question makes necessary a consideration of the act which confers jurisdiction of such matters upon the railroad commission. The material provisions of the act are:

"SEC. 1. Any corporation or association except municipal corporations, organized and existing, or which may hereafter be organized or authorized to do business under the laws of this State, or any lessee or trustee thereof, or any person or persons owning, conducting, managing, operating or controlling any plant or equipment within this State used wholly or in part in the business of transmitting messages by telephone or telegraph, producing or furnishing heat, light, water or mechanical power to the public, directly or indirectly, and any railroad, interurban railroad or other common carrier may issue stocks, bonds, notes or other evidences of indebtedness payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities or for the improvement or maintenance of service or for the discharge or lawful refunding of obligations: *Provided,* and not otherwise, that there shall have been secured from the Michigan railroad commission an order authorizing such issue and the amount thereof, and stating that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of such stocks, bonds, notes or other evidences of indebtedness, is rea-

sonably required for the purposes of such person, corporation or association. Any such person, corporation or association desiring authority to issue stocks, bonds, notes or other evidences of indebtedness shall make written application therefor to the said commission in such form as the commission may require. After receiving such application, said commission may, for the purpose of enabling it to determine whether it should grant such authority, make such inquiry or investigation, hold such hearings and examine such witnesses, books, papers, documents or contracts as it may deem of importance in enabling it to reach a determination. If the applicant shall fail, neglect or refuse to furnish any or all of the information required by said commission, or if the said commission shall so direct, an appraisal of the property of said applicant shall be made by a disinterested person or persons to be appointed by said commission and whose compensation shall be fixed by said commission, the entire expense of making such appraisal to be borne by said applicant. * * * If from the application filed and such other information obtained from the investigation herein authorized, the said commission shall be satisfied that the funds derived from such issue of stocks, bonds or notes are to be applied to lawful purposes and that such issue and amount is essential to the successful carrying out of such purposes, then said commission shall grant authority to make the issue applied for, and in granting such authority, the said commission may impose as a condition of the grant such reasonable terms and conditions as to the commission may seem proper: *Provided,* That any such person, corporation or association may issue notes for lawful purposes, payable at period of not more than twenty-four months, without authority from said commission; but no such notes shall in whole or in part, directly or indirectly, be refunded by any issue of stock or bonds or by any evidence of indebtedness running for more than twelve months without the consent of said commission: *Provided further,* That the provisions of this act shall apply to all stock, shares, bonds or notes issued to or taken by the incorporators or their agents, assigns or trustees of any such corporation or association in the

first instance." * * * Act No. 259, Pub. Acts 1915 (2 Comp. Laws 1915, § 8161),

The language of the act taken as a whole indicates that it was contemplated by the legislature that the application should be made and the approval of the commission secured before the expenditures are made upon capital account if the intention be to later capitalize them. The act provides that "after receiving such application, said commission may, for the purpose of enabling it to determine whether it should grant such authority, make such inquiry or investigation, hold such hearings and examine such books, papers, documents or contracts as it may deem of importance in enabling it to reach a determination." Also that it may order an appraisal of the property involved. These provisions indicate that the investigation and appraisal shall take place in advance of the expenditures. Again, the commission is authorized in granting its approval to do so upon certain conditions. This would authorize the commission to impose a condition that the securities should be sold only as fast as the work progressed. This provision also indicates that the legislature had its eyes on future expenditures rather than upon past ones. Again, the commission is authorized to determine whether the expenditures are to be made for lawful purposes. The abuses which the act was created to prevent give the impression that it was intended by the legislature that the commission should pass upon the lawfulness of the expenditures before they were made, and if found unlawful to prevent them from being made. This view is in keeping with the theory that the general power of the commission is preventive rather than corrective.

The act still further provides that the commission shall determine whether such issue and amount is

essential to the successful carrying out of such lawful purpose. It is somewhat significant that the legislature used the words "is essential" instead of "was essential," or as the New York act provides "is or was necessary." This provision likewise indicates that the legislature had a prospective instead of a retrospective view—that it had in mind what the corporation intended to do rather than what it had done.

The language of the act, these express provisions and the general purpose of the act considered together are persuasive that the legislature intended to confer power upon the commission to pass upon and approve expenditures on capital account before they were made and not afterward.

But it is argued that the commission could pass upon expenditures after they were made and if found unlawful and not reasonably required for the purposes of the corporation, it could then refuse to permit the issue of securities. Yes, the commission could do this but would that course be in keeping with the spirit and purpose of the act? In many cases it would be of no avail to the stockholder to deny the application after the expenditures had been made. If the investment or expenditure be an unlawful one or one not reasonably necessary, it has been made and cannot usually be recalled without loss. The law seeks by this procedure to protect the stockholders and investing public against the issue of securities for reckless and unlawful expenditures. *Peninsular Power Co.* v. *Secretary of State*, 169 Mich. 595. The expenditures in question cover a period of five years. In half that time wild and reckless expenditures indulged in by a board of directors might wreck a solvent railway corporation, and if it did, of what use would it be for the commission to order an appraisal of the property and impose conditions on the sale of the securities? Of what protection would it have been to the stock-

holders of the New York and New Haven Railway, for a public utility board to refuse to give its approval to the expenditures of that company for railroads, steamboats and street and interurban railways five years after they were made? It is true, the commission could have withheld its approval but that would have been cold comfort to the stockholder.

Furthermore, if the New York Central could go on making expenditures on capital account for five years and then come before the commission and secure its approval to capitalize the same, it could go on indefinitely in this way, coming to the commission once in five years, and the result would be that the commission would never have an opportunity to pass upon the lawfulness of an investment, or whether it was reasonably required for the purposes of the corporation, until after the expenditure or investment had been made. The testimony shows that the New York Central Railroad Company has spent upwards of $6,-000,000 in the last five years upon improvements to real estate which it has acquired in recent years in the city of New York, for which it desires to issue capital stock. Among the items in the schedule is one of $319,780.37, which the company has expended upon the Hotel Biltmore in New York city, a property which has cost upwards of $5,600,000, and is a joint venture with the New York and New Haven Railway Company. Other expenditures which are sought to be capitalized are $197,190.30 invested in a building for the Adams Express Company; $836,007.41 in a mail and loft building; $160,947.51 in the United Cigar Stores building; $1,450,000 advanced to the New York State Realty & Terminal Company, a corporation engaged in buying and selling New York city real estate, having also an interest in an electric lighting plant at Rochester, and owning a chain of retail stores at the Clearfield bituminous coal mines; $847,432.64 in

a building for the American Express Company at 33d street and 11th avenue, some considerable distance from its 42d street terminal zone. Without passing upon the lawfulness of such investments by a railroad company, we are persuaded that Act No. 259 contemplates that before investments of this character shall be made, if capitalization be afterward intended, they shall be submitted to the commission, thereby giving the commission an opportunity to pass upon them and determine whether they are for lawful purposes, and whether they are reasonably required for the purposes of the corporation. Any other construction of the act would render the existence of the commission useless because corrective measures have always been available in the courts to test the validity of corporate action.

A further fact strengthens this view. The Michigan public utility act was taken bodily from the New York act. The New York act was passed in 1907. The Michigan act was passed two years later in 1909. In 1910, New York amended its act to empower the commission to approve the securities of certain corporations to reimburse their treasuries on account of expenditures on capital account already made. In doing so, however, the added power was carefully guarded. It is obvious from this action that the New York legislature did not regard the original act as broad enough to give the power here contended for. It is possible that some provision should be made to permit corporations, which in good faith make expenditures from income and which are chargeable to capital account, to capitalize such expenditures, but if it is to be done it is a matter of legislation and should be done by the legislature rather than by the courts.

This identical question has recently been decided adversely to defendant's contention by the Ohio supreme court. A similar application was made to the

public utilities commission of Ohio in respect to the same issue of stock to cover the same expenditures. The prayer of the petition was granted in part by the commission. On review in the supreme court the order of the commission was reversed. In so doing the court said, in part:

"On consideration whereof, the court finds that the expenditures set forth in exhibit A, which were the basis for the issue of the stock, authorization of which was prayed for in the application, and which was allowed by the order of the commission, under section 614-53, which provides that a public utility or railroad when authorized by order of the commission may issue stocks, etc., 'when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities or for the improvement or maintenance of its service, or for the reorganization or readjustment of its indebtedness and capitalization, or for the discharge or lawful refunding of its obligations, or for the reimbursement of moneys actually expended from income or from any other moneys in the treasury of the public utility, or railroad not secured or obtained from the issue of stocks, bonds, notes or other evidences of indebtedness of such public utility or railroad within five years next prior to the filing of an application therefor as herein provided, or for any of the aforesaid purposes' were not expenditures for the acquisition of property or for any of the other purposes mentioned in the section referred to, and, therefore, are not such expenditures as are authorized to be capitalized.

"It is, therefore, ordered and adjudged that the order of the commission be, and the same is hereby, reversed." *Venner* v. *Public Utilities Commission,* decided February 25, 1919.

Our conclusion is that the commission has no power to authorize the issuance of securities to reimburse the treasury of a corporation for expenditures already made on capital account, except in so far as the statute itself may authorize it.

For the reasons indicated the order should be set aside.

OSTRANDER, J.  I assume that from time to time, in a period of five years, the New York Central Railroad Company might find it necessary and for the best interests of the company to acquire, by use of its income, fixed property and to develop the property which it theretofore owned.  Whether the value of such acquired property should be reflected in an increase of capital stock might be a question not fairly determinable as the cases arose.  Good management might eventually demand that an increase of capital stock equal to the money expended should be made.  To secure the right to issue and sell the stock, the company finally applies for the sanction of the commission. It is contended that the commission is without power to sanction such proposed increase and sale of capital stock because—

"The language of the act taken as a whole indicates that it was contemplated by the legislature that the application should be made and the approval of the commission secured before the expenditures are made upon capital account if the intention be, to later capitalize them."

In my opinion, this is too narrow a construction of the act.  It is required that the commission sanction an issue of capital stock.  The proposed issue being submitted to it, the commission inquires whether the funds derived from such issue—

"are to be applied to lawful purposes and that such issue and amount is essential to the successful carrying out of such purposes,"

—and, if satisfied, grants the authority.  The commission is concerned with the stock, or bond, issue, the foundation, security and necessity therefor, and the purposes to which the fund acquired by sales thereof are to be devoted.  It may be agreed that, generally, the powers of the commission are to be exercised to prevent and not to correct abuses.  It does

not follow that it must prevent an issue and sale of stock to reimburse the treasury of the company, when it is clear that no abuse has been or can be committed and that the increase of capital stock represents an increase of capital assets acquired, from time to time, out of income.   The statute may fairly be construed as though it read as the New York act reads.   It must be kept in mind that for supposed abuses of corporate management the courts are open to dissatisfied stockholders.

In my opinion, the board acted in this matter within its powers and its order should not be disturbed.

MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred with OSTRANDER, J.   FELLOWS, J., did not sit.