HILLSDALE LIGHT & FUEL CO. *v.* MICHIGAN PUBLIC
UTILITIES COMMISSION.

1. CORPORATIONS—PUBLIC UTILITIES COMMISSION—POWER TO FIX
AMOUNT OF STOCK AND BONDS.

> The public utilities commission has power under 2 Comp.
> Laws 1915, § 8161 *et seq.*, as amended by Act No. 381,
> Pub. Acts 1919, to fix the amount of capital stock and
> bonds of public utility corporations; the intent of the
> statute being to protect investors against the evils of
> over-capitalization.

2. SAME—EVIDENCE—FIXING VALUE OF PROPERTY.

> In determining the value of the property of a light and
> fuel corporation for the purpose of fixing the amount of
> its corporate stock and bonds to be issued, the public
> utilities commission may consider evidences of value other
> than the cost of reproduction new less depreciation.

3. SAME — LIGHT AND FUEL CORPORATION — VALUE OF PROPERTY
FIXED BY COMMISSION CONCLUSIVE IF SUPPORTED BY EVIDENCE.

> Where the value of the property of a light and fuel cor-
> poration, as determined by the public utilities commission,
> was within the range of the evidence, it may not be
> disturbed by the Supreme Court, on certiorari to review
> same.

4. SAME—"GOING CONCERN VALUE."

> In view of the fact that it is doubtful upon the record
> whether plaintiffs' evidence was sufficient to entitle them
> to claim anything for "going concern value," and that
> the opinion of the commission shows that said value was
> taken into consideration, plaintiffs' objection that it was
> not taken into consideration is without merit.

5. SAME—EVIDENCE—SUFFICIENCY.

> Where there was no proof that charges for overhead
> expenses, based upon percentages fixed by the engineers,
> were actually incurred, the commission was not, as matter
> of law, in error in rejecting same in fixing the value of
> the property.

Certiorari by the Hillsdale Light & Fuel Company and others to review an order of the Michigan public utilities commission fixing the value of said company and authorizing the issuance of bonds.    Submitted June 7, 1922.    (Docket No. 34.)    Writ dismissed October 2, 1922.

*Beaumont, Smith & Harris,* for appellant.

*Merlin Wiley,* Attorney General, and *Clare Retan* and *Samuel D. Pepper,* Assistants Attorney General, for appellee.

FELLOWS, C. J.    Plaintiff Moss and his associates filed with the Michigan public utilities commission their petition under Act No. 144, Pub. Acts 1909, as amended (2 Comp. Laws 1915, § 8161 *et seq.*), the last amendment being Act No. 381, Pub. Acts 1919. Plaintiff Moss who had formerly been interested in the Hillsdale Gas Light Company bought the assets of that company on their sale in bankruptcy proceedings and he and his associates proposed to organize a corporation known as the People's Light & Fuel Company of Hillsdale and issue the bonds and stock of that company in payment for such property.    They sought the approval of the commission of a bond issue of $100,000 and a stock issue of $50,000.    Later by amendment the name of the proposed corporation was changed to Hillsdale Light & Fuel Company, and by another amendment the approval of the commission was asked for the issue of an additional $15,000 in five-year corporate notes.    Numerous hearings were held.    The city of Hillsdale intervened in the proceedings.    An appraisal of the property was had. Amendments to the petition were filed.    As a final result the commission authorized the issue of bonds in the amount of $100,000 and stock in the amount of $40,000.    This action is here reviewed on certiorari.

It is first urged that the public utilities commission which succeeded to the powers and duties of the Michigan railroad commission is without power or authority to fix the amount of capital stock and bonds of public utilities; that if the commission finds that the property is reasonably required for the purposes of the utility and the funds are to be used for a lawful purpose, that it is beyond the power of the commission to limit the amount of stock or bonds to be issued; that that question must be left to the judgment of the governing board of directors of the corporation. This challenge of a power that has been exercised by defendant and its predecessor for more than a dozen years would require more attention and discussion if we did not regard it as settled by the case of *Peninsular Power Co.* v. *Secretary of State,* 169 Mich. 595, a case which neither counsel has seen fit to discuss. In that case a nonresident public utility corporation asked for authority from the secretary of State to transact business in the State. The secretary of State declined to issue such authority because the corporation had not had the issue of its stock *and the amount* thereof approved by the Michigan railroad commission under the provisions of the act of 1909, as amended, being the act here involved. Mr. Justice BLAIR, who wrote for the court, definitely pointed out that the plain purpose of the statute was to protect investors against the evils of over-capitalization, and it was held (we quote the syllabus):

"An electric power corporation, organized under the laws of Wisconsin, is required to have the issue *and amount* of its stock approved by the Michigan railroad commission before the secretary of State may issue thereto his certificate of authority to transact business in Michigan. Act No. 144, Pub. Acts 1909; Act No. 177, Pub. Acts 1911; Act No. 266, Pub. Acts 1911." (The italics are ours.)

Neither *Pollitz* v. *Railroad Commission,* 205 Mich.

549, nor *Venner* v. *Railroad Commission,* 205 Mich. 573, in any way modify this holding. Both were cases in which the controversy was between stockholders and the corporation and as specifically pointed out in the majority opinion in the *Pollitz Case* involved judicial questions for determination by the judicial department. It should be noted that in both cases we declined to vacate the order of the commission and in both cases we dismissed the writ of certiorari. These cases do not disturb the earlier holding of this court, nor do we think it should be disturbed. We shall not quote all of the section under consideration (Act No. 381, Pub. Acts 1919, § 1) as it is too long and is easily accessible. It authorizes the issue of stocks and bonds by public utilities:

*"Provided, and not, otherwise,* That there shall have been secured from the Michigan railroad commission an order authorizing such issue *and the amount thereof,* and stating that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of such stock, bonds, notes or other evidences of indebtedness, is reasonably required for the purposes of such person, corporation or association." * * *

It then provides for filing an application with the commission, provides for an investigation including an appraisal of the property, and then provides:

"If from the application filed and such other information obtained from the investigation herein authorized, the said commission shall be satisfied that the funds derived from such issue of stocks, bonds, or notes are to be applied to lawful purposes and that such issue *and amount* is essential to the successful carrying out of such purposes, or that the issue of such stock fairly represents accumulated and undistributed earnings invested in capital assets and not previously capitalized, then said commission shall grant authority to make the issue applied for, and in granting such authority, the said commission may

impose as a condition of the grant such reasonable terms and conditions as to the commission may seem proper." * * *

Other provisions will be found not necessary to detail and not important to this inquiry; one other provision will be presently noted. Not only is the commission empowered to investigate, hold hearings, and cause an appraisal of the property to be made to aid it in arriving at a result but by the plain terms of the statute it is given authority to fix the *amount* of capital stock and bonds which shall be issued in payment for property acquired by the utility and by the terms of the act it is declared:

"That the provisions of this act shall apply to all stock, shares, bonds or notes issued to or taken by the incorporators or their agents, assigns or trustees of any such corporation or association in the first instance." * * *

Manifestly if the plain purpose of the act was to prevent the over-capitalization of public utilities, the amount of its capital stock and bonds should correlate with the amount and value of its property. The commission was empowered by the act to fix the amount of the issue of stock and bonds and quite properly fixed it at the value of the property.

In finding the value of the property the commission considered the cost of reproduction new less depreciation and other evidences of value. It is here insisted that the commission should have accepted the cost of reproduction new less depreciation alone and that it was in error in considering anything else. Upon the argument it was insisted that cost of reproduction new less depreciation is value and that this court so held in the case of *City of Detroit* v. *Railroad Commission,* 209 Mich. 395, and the Supreme Court of the United States so held in *City and County of Denver* v. *Denver Union Water Co.,* 246 U. S. 178 (38 Sup.

Ct. 278). We can not agree with counsel in this contention. Cost of reproduction new less depreciation is evidence of value but it is not value, nor is it exclusive evidence of value. The fact that this court accepted it and the United States Supreme Court recognized the "propriety" of its use does not exclude the consideration by commissions and courts of all other evidences of value.

In *Smyth* v. *Ames*, 169 U. S. 466, 546 (18 Sup. Ct. 418), it was said:

"We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property."

And in the *Minnesota Rate Cases*, 230 U. S. 352, 434 (33 Sup. Ct. 729), it was said:

"The ascertainment of that value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts."

In the instant case the commission had before it the cost of reproduction new less depreciation which fixed a value in excess of the capitalization asked. It also had before it an appraisal made in the bankruptcy proceedings fixing the value at $140,705; also an appraisal made in 1907 to which was added the sums

expended for additions and betterments to date fixing a value of $117,447.14. In addition to these appraisals the commission had before it the fact that Mr. Moss had recently bought the property for $120,000 at the sale in the bankruptcy proceedings, presumptively a public sale. It also had the statement of plaintiffs' attorney made upon one of the hearings that the stock proposed to be issued was worthless. It also had before it the original petition fixing the value at $150,000. The value fixed by the commission was within the range of the evidence before it and cannot be disturbed by us on certiorari. Plaintiffs' counsel urge that the commission did not consider "going concern value" in reaching their result but the opinion of the commission shows that it did take into consideration "going concern value." It is quite doubtful upon this record whether plaintiffs' evidence was sufficient to entitle them to claim anything for "going concern value."

In the appraisals amounts were added to the value of the tangible property for "overhead construction costs." These were fixed in percentages and included contingencies, engineering and superintendence, insurance and taxes, organization promotion and legal expenses, and interest during construction. In one of the appraisals these "overhead construction costs" aggregated $26,206. The commission expressed the opinion that this amount was too large. We are not called upon to determine in this case what, if any, of these overhead construction costs should be added to the value of the tangible property of a public utility for capitalization or rate making purposes as the case is barren of proof to sustain the items. There is no proof that the percentages fixed by the engineers were proper percentages; no proof that such overhead construction costs were incurred in erecting this plant, or that they are usually incurred in work of this

character. So far as this record discloses the engineer added to the value of the tangible property an arbitrary 24½ per cent. for theoretical "overhead construction costs." It was not as matter of law error for the commission to decline to accept these figures in full.

We find no occasion to disturb the order of the commission and the writ of certiorari will be dismissed.

WIEST, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.