GREAT LAKES TRANSMISSION COMPANY *v.*
MICHIGAN PUBLIC SERVICE COMMISSION

PUBLIC SERVICE COMMISSIONS—NATURAL GAS—INTERSTATE COMMERCE—SECURITIES—JURISDICTION—FEDERAL REGULATION.
The Michigan Public Service Commission has no jurisdiction to regulate the issuance of securities by a corporation engaged in the transmission of natural gas in interstate commerce where no sales are made directly to consumers because the field of securities regulation of natural gas companies engaged solely in interstate commerce and sale for resale has been preempted by the Federal government (49 Stat 838 [1935] *et seq.,* 15 USC § 79 *et seq.*).

Appeal from Michigan Public Service Commission. Submitted Division 2 April 14, 1970, at Lansing. (Docket No. 6,869.)  Decided May 27, 1970.

REFERENCE FOR POINTS IN HEADNOTE
47 Am Jur, Securities Acts § 25.

Petition by Great Lakes Transmission Company for a disclaimer of jurisdiction from the Michigan Public Service Commission, or in the alternative, authority to issue and sell shares of common stock. Jurisdiction asserted by the Michigan Public Service Commission which assessed a fee on the securities to be issued. Petitioner appeals from a denial of rehearing. Reversed.

*Charles S. Tappan*, for Great Lakes Transmission Company.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *David P. VanNote* and *Raymond J. Foresman, Jr.*, Assistant Attorneys General, for Michigan Public Service Commission.

Before: Fitzgerald, P. J., and R. B. Burns, and Van Domelen,* JJ.

Van Domelen, J. Great Lakes Transmission Company, hereinafter Great Lakes, is a Delaware corporation not authorized to do business in Michigan. It has completed construction of a 36-inch gas pipeline from Emerson, Manitoba to St. Clair, Michigan, a distance of 989 miles, plus a 44-mile, 10-inch pipeline to Sault Ste. Marie, Ontario. Great Lakes is owned by Trans-Canada Pipe Lines Limited and by American Natural Gas Company. The main function of Great Lakes is to transport natural gas from Manitoba to Ontario; no direct sales to consumers are contemplated, although gas will be wholesaled to Michigan Consolidated Gas Company.

Great Lakes is a natural gas company subject to regulation by the Federal Power Commission by

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

virtue of the natural gas act, 52 Stat 821 (1938) *et
seq.*, 15 USC § 717 et seq.  The FPC by order au-
thorized Great Lakes to construct the above pipeline.
One of the conditions of that order was that Great
Lakes submit a financing plan satisfactory to it.

By virtue of the Public Utility Holding Company
Act, 49 Stat 838 (1935) *et seq.*, 15 USC § 79 et seq.,
Great Lakes is also subject to regulation by the Se-
curities and Exchange Commission.  Pursuant to
orders issued by the SEC, Great Lakes issued 200,-
000 shares of its common stock to American Nat-
ural and to a wholly-owned subsidiary of Trans-
Canada.

The SEC also authorized Great Lakes to borrow
up to $30,000,000 upon its promissory notes.  The
purpose of the issuance of the stock and the notes
was to obtain financing for the project and to pro-
vide working capital.  Subsequently, Great Lakes
filed an application with the SEC seeking authority
to issue additional shares and promissory notes.

Prior to a decision by the SEC, the Michigan Pub-
lic Service Commission notified Great Lakes that it
appeared to have jurisdiction over the issuance of
the common stock.  Great Lakes then filed its appli-
cation requesting a disclaimer of jurisdiction, or in
the alternative, authority to issue and sell 140,000
shares of common stock.  The application was later
amended to include a similar request for authority
to issue $30,000,000 in promissory notes.

Following a hearing on the petition, the commis-
sion asserted that it did have jurisdiction pursuant
to MCLA § 460.301 *et seq.* (Stat Ann § 22.101 *et
seq.*).  The commission, pursuant to MCLA § 460.61
(Stat Ann § 22.11) assessed Great Lakes a fee of
$44,000, representing 1/10 of 1% of the face value of
the securities authorized to be issued.  Great Lakes
paid the fee, but filed an application for rehearing.

Its application was denied and Great Lakes seeks review of that determination.

The Michigan Public Service Commission relies for its authority on MCLA § 460.301 (Stat Ann § 22.101) which provides in part as follows:

"Sec. 1. Any corporation or association except municipal corporations, * * * or any person or persons owning, conducting, managing, operating or controlling any plant or equipment within this state used wholly or in part in the business of * * * producing or furnishing heat, artificial gas, * * * water or mechanical power to the public, directly or indirectly, and * * * any corporation, association, or individual exercising or claiming the right to carry or transport natural gas for public use, directly or indirectly, * * * or engaged in the business of piping or transporting natural gas for public use, directly or indirectly, or engaged in the business of purchasing natural gas for distribution may issue stocks, bonds, notes or other evidences of indebtedness payable at periods of more than 12 months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities * * * Provided, and not otherwise, That there shall have been secured from the Michigan railroad commission an order authorizing such issue and the amount thereof, and stating that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of such stock, bonds, notes or other evidences of indebtedness, is reasonably required for the purposes of such person, corporation or association, or that the issue of such stock fairly represents accumulated and undistributed earnings invested in capital assets and not previously capitalized. Any such person, corporation or association desiring authority to issue stocks, bonds, notes or other evidences of indebtedness shall make written application therefor

to the said commission in such form as the commission may require  *  *  *  Provided, That any such person, corporation or association may issue notes for lawful purposes, payable at periods of not more than 24 months, without authority from said commission; but no such notes shall in whole or in part, directly or indirectly, be refunded by any issue of stock or bonds or by any evidence of indebtedness running for more than 12 months without the consent of said commission."

The language of this statute clearly sets forth the intent of the legislature to regulate through the Michigan Public Service Commission the issuance of securities by gas transmission companies which, directly or indirectly, sell gas to the public.

However, the authority granted in said statute is limited by the action of the federal government in this field.

Section 7(c) of the natural gas act requires appellant to obtain a certificate of public convenience and necessity from the Federal Power Commission. Section 7(e) of said act gives the Federal Power Commission the authority to attach to such certificate reasonable terms and conditions.

The Public Utility Holding Company Act, *supra,* applies to any gas utility "company" which owns or operates facilities used for the distribution at retail [of] natural or manufactured gas. This act declares, *inter alia,* that the national interest requires that *investors* and consumers be protected against the adverse effects caused when "such securities are issued by a subsidiary public utility company under circumstances which subject such company to the burden of supporting an overcapitalized structure and tend to prevent voluntary rate reductions".

There is no dispute that Great Lakes is subject to the jurisdiction of the SEC. The commission merely asserts that it also has jurisdiction. This contention of the commission is valid insofar as it applies to gas companies engaged in the intrastate business of retail sales but is not valid as applied to interstate transportation of gas for resale.

The intent of congress to regulate interstate transportation of gas for resale and to leave to the states the regulation of intrastate gas sale is derived from section C of said act and from SEC regulation § 250.2 which provides:

"(1) such holding company, and every subsidiary company thereof which is a public-utility company from which such holding company derives, directly or indirectly, any material part of *its income are predominantly intrastate in character and carry on their business substantially in a single state in which such holding company and every such subsidiary company thereof are organized;* or

"(2) such holding company is predominantly a public utility company whose operations as such do not extend beyond the state in which it is organized and states contiguous thereto." (Emphasis ours.)

Subsection (6) of § 6 of the act provides:

"The commission * * * shall exempt from the provisions of subsection (a) the issue or sale of any security by any subsidiary company of a registered holding company, if the issue and sale of such security are solely for the purpose of financing the business of such subsidiary company and have been expressly authorized by the state commission *of the state in which such subsidiary company is organized and doing business.*" (Emphasis ours.)

These exemption provisions of said act have been considered by the courts and the SEC. All the deci-

sions exempt from operation of said act those hold-
ing companies engaged in intrastate business.

*In the Matter of Pacific Gas and Electric Com-
pany* (1941), 10 SEC 39.   Accord: *In the Matter of
Central California Utilities Corporation* (1937), 2
SEC 1; *In the Matter of the Connecticut Power
Company* (1936), 1 SEC 266; *In the Matter of
Northeastern Utility Associates and South Shore
Utilities Associates* (1936), 1 SEC 522; *In the Matter
of Commonwealth Edison Co.* (1948), 28 SEC 172.

It is to be noted that to qualify for the exemption
in said act two requirements must be met.   The
corporate business must be intrastate and there
must be incorporation in the state.   *In the Matter
of Louisville Gas and Electric Company* (1941), 10
SEC 378.   Great Lakes, a Delaware corporation
with a wholly interstate business, does not qualify
for exemption under either requirement.

The case law, both Federal and state, supports
this interpretation.

In *Natural Gas Pipeline Company of America* v.
*Illinois Commerce Commission* (1965), 33 Ill 2d
214 (210 NE2d 490), the Court decided that the
Federal Power Commission has authority to reg-
ulate the issuance of securities.   Said Court fur-
ther concluded that it was "apparent" that regula-
tion of such securities by a state commission would
create the "prospect of interference with the federal
regulatory power" over plans for financing the con-
struction or extension of facilities subject to the ju-
risdiction of the Federal Power Commission.   That
Court held the Illinois Commerce Commission with-
out jurisdiction.

*Panhandle Eastern Pipe Line Co.* v. *Public Serv-
ice Commission of Indiana* (1947), 332 US 507 (68
S Ct 190, 92 L Ed 128) and *Panhandle Eastern Pipe
Line Company* v. *Michigan Public Service Commis-*

*sion* (1950), 328 Mich 650, stand for the well-settled proposition that regulation of natural gas companies engaged solely in interstate commerce and sale for resale to the public has been preempted by the Federal government by virtue of the Natural Gas Act, *supra.*

The Michigan Supreme Court at 328 Mich 659, quoting from the opinion of the United States Supreme Court, said:

"Three things and three only Congress drew within its own regulatory power, delegated by the act to its agent, the Federal power commission. These were: (1) The transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale.

"The omission of any reference to other sales, that is, to direct sales for consumptive use in the affirmative declaration of coverage was not inadvertent. It was deliberate. For congress made sure its intent could not be mistaken by adding the explicit prohibition that the act 'shall not apply *to any other * * * sale.*' (Emphasis added.) Those words plainly mean that the act shall not apply to any sales other than sales 'for resale for ultimate public consumption for domestic, commercial, industrial, or any other use.' Direct sales for consumptive use of whatever sort were excluded.

*"The line of the statute was thus clear and complete. It cut sharply and cleanly between sales for resale and direct sales for consumptive uses. No exceptions were made in either category for particular uses, quantities or otherwise. And the line drawn was that one at which the decisions had arrived in distributing regulatory power before the act was passed.*

*"Moreover, this unusual legislative precision was not employed with any view to relieving or exempt-*

*ing any segment of the industry from regulation. The act, though extending Federal regulation, had no purpose or effect to cut down State power. On the contrary, perhaps its primary purpose was to aid in making State regulation effective, by adding the weight of Federal regulation to supplement and reinforce it in the gap created by the prior decisions.* * * *

*"Congress, it is true, occupied a field. But it was meticulous to take in only territory which this court has held the states could not reach. That area did not include direct consumer sales, whether for industrial or other uses."* (Emphasis ours.)

The clear intent of congress as expressed through its enactments, the Federal case law and the state case law stand for the proposition that the regulation of natural gas companies engaged solely in interstate commerce and sale for resale has been preempted by the Federal government pursuant to the natural gas act. Such preemption prohibits regulation by the Michigan Public Service Commission.

The primary function of the Michigan Public Service Commission as set forth in MCLA § 450.54 (Stat Ann § 22.4) is "the control and regulation, including the fixing of rates and charges, of all public utilities within this State, producing, transmitting, delivering or furnishing steam for heating, or power, or gas for heating or lighting purposes for the public use."

The interest of the commission in the issuance of securities by a public utility is to prevent overcapitalization. *Hillsdale Light and Fuel* v. *Michigan Public Utilities Commission* (1922), 220 Mich 101. The issuance of securities has an important bearing on the financial structure of a public utility and that in turn has a direct bearing on the rates set for such companies. The regulation of the rates charged

by Great Lakes is not within the jurisdiction of the Michigan Public Service Commission. So, to allow Michigan Public Service Commission to regulate issuance of securities, would be to allow it to affect rates indirectly, which it is forbidden to do directly. The regulation of securities issued by Great Lakes in the form of the assessment of a fee thereon is outside the jurisdiction of the Michigan Public Service Commission.

In summary, the Michigan Public Service Commission has no jurisdiction to regulate the issuance of securities by a corporation such as Great Lakes, engaged in the transmission of natural gas in interstate commerce where no sales thereof are made directly to consumers. While this result could be compelled by the natural gas act or the commerce clause itself, we limit our holding to the facts of this case as the field of securities regulation has been preempted by virtue of the Public Utility Holding Company Act.

Its order is reversed, and the commission is directed to refund to Great Lakes the $44,000 paid by Great Lakes pursuant to MCLA § 460.61 (Stat Ann § 22.11).

No costs are allowed, a public question being involved.

All concurred.