MICHIGAN GAS STORAGE COMPANY v PUBLIC SERVICE
COMMISSION

1. Gas—Intrastate Pipelines—Interstate Commerce—Natural
    Gas Act.

    A state may regulate intrastate pipelines which carry interstate
    gas, and if it fails to do so, the Natural Gas Act provides for
    Federal regulation (§ 1, 52 Stat 821 [1938]; 15 USC 717).

2. Gas—Public Utilities—Issuance of Securities—Jurisdiction of
    State—Gas Transmission Companies—Statutes.

    The clear import of the language contained in the statute regulat-
    ing the issuance of securities by public utilities is to include
    within the state's jurisdiction all gas transmission companies
    operating within the state (MCLA 460.301; MSA 22.101).

3. Public Service Commissions—Gas Storage Companies—Federal
    Power Commission—Concurrent Jurisdiction—Issuance of
    Securities.

    Failure of the Public Service Commission to assert jurisdiction
    over the rates, services, and facilities of a gas storage company
    which is subject to the concurrent jurisdiction of the Federal
    Power Commission and the Public Service Commission pre-
    cludes the Public Service Commission from regulating the
    issuance of securities by the company.

4. Public Service Commissions—Jurisdiction—Issuance of Securi-
    ties—Securities Issuance Fees—Federal Power Commission
    —Gas Storage Companies—Statutes.

    The Public Service Commission is barred from asserting jurisdic-
    tion to control the issuance of securities and thereby claiming
    the statutory issuance fee where the commission has acquiesced
    in Federal Power Commission control over the rates, services,
    and facilities of a gas storage company desiring such issuance
    (MCLA 460.61; MSA 22.11).

References for Points in Headnotes
[1] 61 Am Jur 2d, Pipelines §§ 6–12.
[2–7] 26 Am Jur 2d, Electricity, Gas, and Steam §§ 10–17.

5. PUBLIC SERVICE COMMISSIONS—POWERS—ISSUANCE OF SECURITIES—
     GENERAL POWERS—ANCILLARY POWERS—PUBLIC UTILITIES.
    The Public Services Commission's power to regulate the issuance
    of securities by a public utility is ancillary to the commission's
    general power to control rates, services, and facilities.

6. PUBLIC SERVICE COMMISSIONS—FEDERAL POWER COMMISSION—GAS
     STORAGE COMPANIES—ISSUANCE OF SECURITIES.
    It would be inconsistent with the legislative purpose of the state
    and congressional regulatory schemes to allow the Public Ser-
    vice Commission to regulate the integrally related matter of
    securities issues where the Public Service Commission has
    acquiesced in Federal Power Commission jurisdiction over the
    primary matters of the rates, services, and facilities of a gas
    storage company subject to their concurrent jurisdiction.

7. PUBLIC SERVICE COMMISSIONS—JURISDICTION—ISSUANCE OF SECURI-
     TIES—GAS STORAGE COMPANIES—SECURITIES ISSUANCE FEES—
     STATUTES.
    The Public Service Commission is barred from collecting the
    statutory issuance fee for the issuance of securities by a gas
    storage company where the Public Service Commission lacks
    jurisdiction to regulate the issuance of securities by the gas
    storage company (MCLA 460.61; MSA 22.11).

Appeal from the Michigan Public Service Com-
mission. Submitted June 7, 1976, at Lansing.
(Docket No. 25354.) Decided November 22, 1976.

The Michigan Gas Storage Company filed with
the Michigan Public Service Commission an appli-
cation which requested the commission to deter-
mine that the commission had no authority under
state law to regulate its issuance of securities and
alternatively requested authorization to issue
short-term securities. Disclaimer of jurisdiction
was denied and issuance of securities was autho-
rized. The Michigan Gas Storage Company appeals
by leave granted. Reversed.

*Albert J. Thorburn, James R. Anderson* and
*David A. Mikelonis,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter V. Kron* and *Robert J. Taube,* Assistants Attorney General, for defendant.

Before: BASHARA, P. J., and M. F. CAVANAGH and D. T. ANDERSON,* JJ.

M. F. CAVANAGH, J. Appellant Michigan Gas Storage Company appeals from an April 15, 1974, order of the Michigan Public Service Commission denying appellant's motion for disclaimer of jurisdiction but granting appellant's alternative application, under protest, for authorization to issue securities in the amount of $7,500,000.

Following the Commission's order, appellant issued the authorized securities and, under protest, paid the statutory securities issuance fee of $7,500 required under MCLA 460.61; MSA 22.11. Subsequently, the Commission denied appellant's application for rehearing, and we granted leave to appeal. Although the present case was consolidated with No. 25395, *Indiana & Michigan Power Co v Public Service Commission,* 72 Mich App 398; 249 NW2d 429 (1976), the differences in facts and relevant jurisdictional statutes mandate separate opinions.

Appellant Michigan Gas Storage Company (Storage Company) is a Michigan corporation, operated as a wholly-owned subsidiary of Consumers Power Company, a public utility operating solely in Michigan, which sells gas to the public for domestic, commercial, and industrial uses. Storage Company is restricted by its articles of incorporation to sell natural gas only to public utilities and other natural gas companies within Michigan. Although

---

* Circuit judge, sitting on the Court of Appeals by assignment.

some parts of the record are subject to dispute, Storage Company admits that all of its facilities are located within the state and that it receives its gas from connections with the pipelines of Panhandle Eastern Pipe Line Company. At the time of application to the Commission, Storage Company bought its gas at wholesale from Panhandle Eastern, stored it in storage fields located in Michigan and sold the gas at wholesale to its parent, Consumers Power. The storage facilities functioned to assure a steady supply of gas despite seasonal changes in demand.

On March 11, 1974, Storage Company filed with the Commission an application which requested the Commission to determine that it had no authority under state law to regulate Storage Company's issuance of securities. The application alternatively requested that the Commission authorize Storage Company to issue $7,500,000 in short-term securities.

On March 29, 1974, the Commission held a public hearing on Storage Company's application. At the hearing, Storage Company paid to the State of Michigan the securities issuance fee required by MCLA 460.61; MSA 22.11, 1/10 of 1% of the face value of the securities; in this case, $7,500.[1] Pay-

[1] MCLA 460.61; MSA 22.11 provides:

"Whenever any stocks, bonds, notes or other evidences of indebtedness are authorized by the commission to be issued in accordance with any law of this state, the party or parties upon whose application said securities are authorized shall before the issuance or sale of said securities, pay into the treasury of the state of Michigan a sum equal to one-tenth of one per cent of the face value of the securities so authorized; the sum so paid not to be less than $50.00 in any case: Provided, That a minimum fee of $5.00 shall be paid by rural telephone companies with respect to the authorization to borrow money: Provided, however, That where the property upon which such stocks, bonds, notes or other securities are authorized to be issued, is located partly within and partly without the state of Michigan, then said fee shall be computed only in such an amount and on such proportion of the entire issue, as the amount of the property of such

ment of the fee was properly protested to preserve Storage Company's claim for refund should the Commission's assertion of jurisdiction be found erroneous.

By its order of April 15, 1974, the Commission specifically found that,

"[Storage Company] is a natural gas company subject to the jurisdiction of the Federal Power Commission under the Federal Natural Gas Act (52 Stat 821, 1938 et seq., 15 USC 717 et seq.), and as such is engaged in the purchase and transportation of natural gas in interstate commerce to Consumers Power Company for resale for ultimate public consumption."

It also appears from the record that since its creation in 1946, the Storage Company has sought authorization from the Federal Power Commission to establish its rates, services and facilities.

At this point we must note that the record in this case is sparse. Although the Commission impermissibly attempted to supplement the record on appeal by *ex parte* affidavits, Storage Company is the party which claimed that the present record was sufficient to decide the jurisdictional issue presented. Moreover, Storage Company in these circumstances had the burden of producing sufficient evidence to the Commission to justify its claims. Part of the problem having been solved by factual concessions at oral argument, and convinced that a remand for fact-finding would serve little purpose but delay, we proceed to the merits.

I

The arguments raised by the parties require

applicant actually located within the state of Michigan, bears to the total amount of the property upon which such securities are issued."

background review of this area of state-Federal conflict. As in most Commerce Clause-Federal preemption areas, there has been active judicial-legislative interplay.

In a series of cases early in this century, the United States Supreme Court struck down attempts by state legislatures to regulate the behavior of interstate natural gas transmission companies. *Missouri ex rel Barrett v Kansas Natural Gas Co*, 265 US 298; 44 S Ct 544; 68 L Ed 1027 (1924), *Public Utilities Commission of Rhode Island v Attleboro Steam & Electric Co*, 273 US 83; 47 S Ct 294; 71 L Ed 549 (1927).

"[As] the decisions stood in 1938, the states could regulate sales direct to consumers, even though made by an interstate pipe-line carrier. This was true of sales not only for domestic and commercial uses but also for industrial consumption, at any rate whenever the interstate carrier engaged in distribution for all of these uses. On the other hand, sales for resale, usually to local distributing companies, were beyond the reach of state power, regardless of the character of ultimate use. This fact not only prevented the states from regulating those sales but also seriously handicapped them in making effective regulation of sales within their authority.

"This impotence of the states to act in relation to sales for resale by interstate carriers brought about the demand for federal regulation and Congress' response in the Natural Gas Act." *Panhandle Eastern Pipe Line Co v Public Service Commission of Indiana*, 332 US 507, 514–516; 68 S Ct 190; 92 L Ed 128 (1947). (Footnotes omitted.)

The Natural Gas Act, in pertinent part, provided in § 1, 52 Stat 821 (1938), 15 USC 717:

"(a) As disclosed in reports of the Federal Trade Commission made pursuant to S. Res. 83 (Seventieth

Congress, first session) and other reports made pursuant to the authority of Congress, it is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest.

"(b) The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

The jurisdictional sections of the Natural Gas Act were interpreted to follow the same line laid down by the Supreme Court.

"Congress, it is true, occupied a field. But it was meticulous to take in only territory which this Court had held the states could not reach." *Panhandle Eastern Pipe Line Co, supra,* 332 US at 519; 68 S Ct at 196; 92 L Ed at 139 (1947).

The FPC regulated interstate transmission companies, while the states were left to regulate local distribution companies, an area of primarily local interest where the demand for uniformity of regulation was least felt. Included within the exclusive Federal ambit were gas transmission companies in the same situation as Storage Company: the company's gas lines were all within one state, it obtained its gas supply from interstate pipeline connections at the state line or within the state, and the company sold its gas to local gas distribu-

tion companies, for resale to the public. *Illinois Natural Gas Co v Central Illinois Public Service Co,* 314 US 498; 62 S Ct 384; 86 L Ed 371 (1942).

In 1950, the Supreme Court extended the FPC jurisdiction to include interstate gas transmission companies which sold directly to consumers and industry. The court reasoned that the interstate nature of the business brought the companies under FPC authority, despite the integration with local distribution systems. *Federal Power Commission v East Ohio Gas Co,* 338 US 464; 70 S Ct 266; 94 L Ed 268 (1950). In 1954 Congress responded to what it perceived to be this overextension of FPC jurisdiction by enacting the "Hinshaw amendment" to the Natural Gas Act. The amendment, adopting language proposed by the FPC, provides:

"(c) The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States. A certification from such State commission to the Federal Power Commission that such State commission has regulatory jurisdiction over rates and service of such person and facilities and is exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction." 68 Stat 36 (1954), 15 USCA 717(c).

The legislative history of the amendment shows that Congress intended a cooperative sphere of

regulation by state and Federal authorities. Gaps in regulation were to be closed with a minimum of duplicative efforts. The relevant Senate Report spells out the scope of the amendment:

"Specifically this legislation proposes to amend the Natural Gas Act by adding to section 1 a new subsection (c) providing, subject to certain specified conditions, that a company shall not be subject to the act by reason of the fact that it is· engaged in the transportation, within a State, of out-of-State natural gas received within or at the State border or by reason of the fact that it sells, either to local distributing companies or to companies for resale and ultimate consumption within that State, out-of-State natural gas received by it within or at the State border. *The provision applies, however, only if (1) all the natural gas received in the State by such person is ultimately consumed in such State, and (2) the rates charged, the service performed, and the facilities used by such person are subject to regulation by a State commission.*

"The new subsection further provides that in any situation where its provisions apply a certification from the appropriate State commission to the Federal Power Commission that the State commission has regulatory jurisdiction over the rates, service, and facilities of the company in question, *and is exercising such jurisdiction,* shall constitute conclusive evidence of the regulatory power or jurisdiction of the State commission over such company. The bill declares that the matters which, by its provisions, would be clearly exempted from the Natural Gas Act are matters primarily of local concern and are subject to regulation by the several States." (Emphasis added.) S Rep No 817, 83rd Cong, 1st Sess (1953).

Section 717(c) has not been expansively construed. See *Louisiana Power & Light Co v Federal Power Commission*, 483 F2d 623 (CA 5, 1973), *cert den* 416 US 974; 94 S Ct 2001; 40 L Ed 2d 563 (1974). The FPC, responsible for drafting and administering the amendment, has persuasively con-

strued § 717(c).[2] The FPC requires that not only
must the applicant for an exemption be potentially
subject to state regulation, but that the state be
presently exercising its regulatory authority. The
regulations put the burden of proving the Federal
exemption upon the company and require the
company to give prompt notice of any change in
jurisdictional status. The thrust of the statute and
regulations is to make clear-cut the jurisdiction of
state and Federal regulatory bodies. The state may
regulate intrastate pipelines which carry inter-
state gas, but if it fails to do so, the umbrella
coverage of the Natural Gas Act provides for

---

[2] 18 CFR § 152 (Subchapter E—Regulations under Natural Gas Act).
"§ 152.1 Who may apply

"Application for exemption * * * may be made by any person as
defined in the Natural Gas Act engaged in, or authorized to engage in
the transportation in interstate commerce or the sale in interstate
commerce for resale, of natural gas received by such applicant from
another person within or at the boundary of a State, if all of the
natural gas so received is ultimately consumed in such State. *Pro-
vided,* That the natural-gas rates (including rates for sales for resale)
and service of the applicant and its natural gas facilities are subject
to regulation by a State Commission, as defined in the Natural Gas
Act, and that such State Commission is exercising that jurisdiction."
"§ 152.4 Certificate from State Commission

"Applications for exemption under § 152.3 shall contain, or there
shall be separately filed, a certificate from the appropriate State
Commission that the natural-gas (a) rates (including rates for sales for
resale), (b) service, and (c) facilities of the applicant are subject to the
regulatory jurisdiction of the State Commission and that the State
Commission is exercising such jurisdiction."
"§ 152.5 Applicability of exemption

"Nothing in this part shall be construed to relieve any person
exempted from the provisions of the Natural Gas Act by section 1(c)
thereof from compliance with valid State regulatory requirements. If
an exemption from the provisions of the Natural Gas Act is effective
pursuant to section 1(c), the exempted person shall be responsible for
calling to the attention of the State Commission by which it is
regulated and of the Federal Power Commission any future opera-
tions in which it may engage which may make the exemption inappli-
cable to it. The exempted person shall also be responsible for calling
to the attention of the Federal Power Commission any changes,
amendment, or judicial or administrative interpretation of the State
law pursuant to which it is regulated, which may make the exemp-
tion inapplicable to it."

Federal regulation. It achieves the congressional purpose of minimally overlapping state-Federal jurisdiction without the gap in regulatory authority that gave rise to the Natural Gas Act. It is against this background that we consider this case.

II

The Commission asserts jurisdiction under 1909 PA 144 (MCLA 460.301; MSA 22.101), which provides in relevant part:

"Section 1. Any corporation or association except municipal corporations, organized and existing, or which may hereafter be organized or authorized to do business under the laws of this state, or any lessee or trustee thereof, or any person or persons owning, conducting, managing, operating or controlling any plant or equipment within this state used wholly or in part in the business of transmitting messages by telephone or telegraph, producing or furnishing heat, artificial gas, light, water or mechanical power to the public, directly or indirectly, and any railroad, interurban railroad or other common carrier, *or any corporation, association, or individual exercising or claiming the right to carry or transport natural gas for public use, directly or indirectly, or petroleum oil by or through pipe line or lines or engaged in the business of piping or transporting natural gas for public use, directly or indirectly, or engaged in the business of purchasing natural gas for distribution* may issue stocks, bonds, notes or other evidences of indebtedness payable at periods of more than 12 months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities or for the improvement or maintenance of service or for the discharge or lawful refunding of obligations and may issue stock to represent accumulated earnings invested in capital assets and not previously capitalized: Provided, and not otherwise, That there shall have been secured from the Michigan railroad commission (now Michigan

Public Service Commission) an order authorizing such issue and the amount thereof, and stating that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of such stock, bonds, notes or other evidences of indebtedness, is *reasonably required for the purposes of such person, corporation or association, or that the issue of such stock fairly represents accumulated and undistributed earnings invested in capital assets and not previously capitalized.*" (Emphasis supplied.)

Although Storage Company claims that the Commission's jurisdictional statutes exclude Storage Company from the ambit of state regulation, the clear import of the language "carry or transport natural gas for public use, directly or indirectly" is to include all gas transmission companies operating within the state.

· However, the failure of the Commission to assert jurisdiction over the Storage Company's rates, services, and facilities precludes it from regulating the securities issue.

Section 717(c) does not preclude FPC regulation of Storage Company's rates, services, and facilities. Storage Company appears to fall within the criteria of the Hinshaw amendment: It is a

"person engaged in * * * the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State * * * [and] all of the natural gas so received is ultimately consumed within such State."

The rest of § 717(c) and the FPC regulations require that the state agency assert its jurisdiction in order for the exemption to become effective. In effect, § 717(c) indicates the binding congressional conclusion that Storage Company falls within the

area of concurrent constitutional jurisdiction of state and Federal agencies. The statute provides the state the option of asserting its own authority or acquiescing in Federal regulation. Here, the Commission by its order acquiesced in FPC control of Storage Company's rates, services, and facilities.

By its bow to FPC authority, the Commission is barred from asserting jurisdiction to control securities issuance, and claiming the statutory fee. *Great Lakes Transmission Co v Michigan Public Service Commission,* 24 Mich App 77; 180 NW2d 59 (1970), properly held that the Commission's power to regulate securities issuance is ancillary to the Commission's general power to control rates, services, and facilities. The very standards which the Commission must use in MCLA 460.301; MSA 22.101 require the exercise of judgment as to whether use of the capital involved is "reasonably required for the purposes of such * * * corporation". MCLA 460.301; MSA 22.101 clearly anticipates the Commission's judgment as to the "necessity" of the funds for "acquisition of property, the construction, completion, extension, or improvement of facilities or for the improvement or maintenance of service". These judgments necessarily involve consideration of the propriety of Storage Company's rates, services, and facilities. As this Court recognized in *Great Lakes Transmission Co, supra,* the capitalization of a company is integrally related to its rates of return and financial status, and in turn must have a direct bearing on the rates set by the agency in oversight. It would be at cross purposes to the legislative schemes of both this state and the Congress to split the authority over rates and securities issuances. In this very case, Storage Company applied to the FPC for a change in rate structure to reflect the requested securities issue. The possibility of inconsistent

commands requires that the agency with primary responsibility prevail.[3]

## III

We do not hold that the Commission has been constitutionally precluded from regulating Storage Company. Indeed, Congress has explicitly allowed the state the option. We hold merely that where the Commission has acquiesced in FPC jurisdiction over the primary matters of rates, services, and facilities, it would be inconsistent with the legislative purpose of the state and congressional schemes to allow the Commission to regulate the integrally related matter of securities issues.

Since the Commission lacked jurisdiction to regulate the securities issue, it lacked jurisdiction to require payment of the fee pursuant to MCLA 460.61; MSA 22.11. The fee must be refunded.

Our disposition of the case makes discussion of the other issues raised by the parties unnecessary.

Reversed. No costs, a public question.

---

[3] For a similar result on slightly different grounds, *see Natural Gas Pipeline Co of America v Illinois Commerce Commission,* 33 Ill 2d 214; 210 NE2d 490 (1965).