THE WESTERN UNION TELEGRAPH COMPANY v PUBLIC
SERVICE COMMISSION

Docket Nos. 58259, 62836, 62854, 63292, 63293. Submitted February 3,
1983, at Lansing.—Decided July 11, 1983.

The Western Union Telegraph Company is a Delaware corpora-
tion with its principal office in New Jersey. It is authorized to
do business in all the mainland states and the District of
Columbia. About five to seven percent of its revenues come
from intrastate as opposed to interstate operations. In Michi-
gan, its revenues are minimal and declining. As of 1979, 1.87%
of its plant investment was in Michigan. Out of 11,400 employ-
ees, 275 live in Michigan. While four percent of its preferred
stock is held by Michigan residents, none of its common stock
is. It filed four applications with the Public Service Commission
requesting the commission to disclaim jurisdiction or, alterna-
tively, authorize various unsecured note issuances. The PSC
refused to disclaim jurisdiction but authorized the issuances.
Western Union also filed an application objecting to the assess-
ment and filing requirement, arguing that defendant has no
jurisdiction. The hearing officer recommended to defendant that
it disclaim jurisdiction. However, the PSC issued an order
asserting jurisdiction. Western Union appealed each decision
separately by leave granted and the appeals were consolidated.
*Held:*

1. The Court of Appeals has jurisdiction to review a decision
of the Public Service Commission to exercise jurisdiction on an
application objecting to an assessment and filing requirement.

2. A state may regulate local commerce even if the regula-
tion affects interstate commerce. However, a state's regulation
is violative of the commerce clause of the United States Consti-
tution if it unduly burdens interstate commerce in matters
where uniformity is necessary in the constitutional sense of
accomplishing a permitted purpose. The burden on commerce

REFERENCES FOR POINTS IN HEADNOTES
[1] 64 Am Jur 2d, Public Utilities § 276 *et seq.*
[2] 15A Am Jur 2d, Commerce §§ 7 *et seq.,* 78.

caused by the PSC's exercise of jurisdiction in this case is substantial. The PSC should not exercise jurisdiction.

Reversed.

1. APPEAL — JURISDICTION — PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION.

The Court of Appeals has jurisdiction to review a decision of the Public Service Commission to exercise jurisdiction on an application objecting to an assessment and filing requirement (MCL 460.301[6]; MSA 22.101[6]).

2. COMMERCE — REGULATION OF COMMERCE — CONSTITUTIONAL LAW.

A state may regulate local commerce even if the regulation affects interstate commerce; however, a state's regulation is violative of the commerce clause of the United States Constitution if it unduly burdens interstate commerce in matters where uniformity is necessary in the constitutional sense of accomplishing a permitted purpose.

*Dickson, Wright, Moon, Van Dusen & Freeman* (by *Joseph A. Fink* and *Charles J. Ten Brink)* and *Glen Schaeffer,* of counsel, for appellant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Arthur E. D'Hondt* and *John M. Dempsey,* Assistant Attorneys General, for appellant.

Before: T. M. BURNS, P.J., and ALLEN and CYNAR, JJ.

T. M. BURNS, P.J. Plaintiff appeals by leave granted five orders from the defendant Michigan Public Service Commission asserting jurisdiction over plaintiff's issuance of securities.

Overall, plaintiff provides a nationwide transmission network. It provides four general types of services: nonvoice communication, private communication systems (to government and business), public communications *(e.g.,* telegrams), and services relating to its communication network. All of its public service communications are routed

through a computerized switching facility in Virginia. The entire business is integrated on a national basis. To finance its operations, it issues securities on a regular basis. A securities issue is a single, indivisible act which cannot be allocated among the different states. Its operations are also regulated by the Federal Communications Commission (47 USC 151, *et seq.*), and the Securities and Exchange Commission (15 USC 77a *et seq.*).

Plaintiff is incorporated in Delaware with its principal offices in New Jersey. It is authorized to do business in all the mainland states and the District of Columbia. About five to seven percent of its revenues come from intrastate as opposed to interstate operations. In Michigan, its revenues are minimal and declining. As of 1979, 1.87% of its plant investment was in Michigan. Out of 11,400 employees, 275 live in Michigan. While four percent of its preferred stock is held by Michigan residents, none of its common stock is.

For the past number of years, plaintiff has requested that defendant disclaim jurisdiction. On April 21, 1981, plaintiff filed an application with defendant requesting a disclaimer of jurisdiction or, in the alternative, authorizing $75,000,000 of unsecured notes. Defendant exercised jurisdiction but authorized the notes on May 27, 1981. This case is Docket No. 58259.

On November 30, 1981, plaintiff filed another application with defendant and again requested that defendant disclaim jurisdiction or, in the alternative, authorize plaintifff to borrow $140 million and to issue unsecured notes. Again, on January 19, 1982, plaintiff requested a disclaimer of jurisdiction or authority to borrow $17.3 million and to issue unsecured notes. Defendant exercised jurisdiction but approved both securities issues on

February 9, 1982. These cases are Docket Nos. 62854, 62863.

On December 8, 1981, plaintiff filed an application requesting defendant disclaim jurisdiction or approve plaintiff's borrowing $50 million and issuing unsecured notes. Defendant refused to disclaim jurisdiction but approved the issue on March 16, 1982. This case is Docket No. 63293.

In the meantime, on May 22, 1980, plaintiff filed an application objecting to the assessment and filing requirement arguing that defendant has no jurisdiction. The hearing was held August 1, 1980. On December 18, 1981, the hearing officer recommended to defendant that it disclaim jurisdiction. However, on March 9, 1982, defendant issued an order asserting jurisdiction. This case is Docket No. 63292. All five cases have been consolidated for this appeal.

Defendant's sole ground for jurisdiction is 1909 PA 144:

"A person, corporation, or association * * * organized or authorized to do business under the laws of this state, owning, conducting, managing, operating, or controlling a plant or equipment within this state used wholly or in part in the business of transmitting messages by telephone or telegraph, * * * may issue stocks, bonds, notes, or other evidences of indebtedness payable at periods of more than 12 months after the date of issuance, if necessary for the acquisition of property, the construction, completion, extension, or improvement of facilities or for the improvement or maintenance of service or for the discharge or lawful refunding of obligations and may issue stock to represent accumulated earnings invested in capital assets and not previously capitalized, if the public service commission issues an order authorizing the issue and the amount of the issue, and states that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of the stock, bonds, notes, or

other evidences of indebtedness, is reasonably required for the purposes of the person, corporation, or association, or that the issue of the stock fairly represents accumulated and undistributed earnings invested in capital assets and not previously capitalized." MCL 460.301(1); MSA 22.101(1).

Failure to comply with this act is punishable by a fine of not less than $1,000 nor more than $5,000, MCL 460.302; MSA 22.102, or imprisonment for not less than one year nor more than five years. MCL 460.303; MSA 22.103.

The basic issue here is not whether or not 1909 PA 144 is unconstitutional on its face, but whether or not it is unconstitutional as applied in this case as this Court held in a different context in *Great Lakes Transmission Co v Michigan Public Service Comm*, 24 Mich App 77; 180 NW2d 59 (1970). But first, defendant raises a procedural issue. It claims that Docket No. 63292 is not properly before this Court. Labelling it an assessment case, it argues that under MCL 460.117; MSA 22.84(7), the Court of Claims instead of this Court presently has jurisdiction. It further argues therefore, because Docket No. 63292 is the only case that has the factual record necessary to determine whether or not the act is unconstitutional as applied, this Court does not have the factual record to decide the issue in the other four cases. However, regardless of how one may label Docket No. 63292, the basic issue before the hearing officer was whether or not defendant could constitutionally exercise jurisdiction over plaintiff. MCL 460.301(6); MSA 22.101(6) gives this Court jurisdiction to review a final order exercising jurisdiction. See also GCR 1963, 801.1. Accordingly, Docket No. 63292 is properly before this Court. Therefore, this Court has the necessary factual record to resolve not only Docket No.

63292 but the other four cases as well. We do not believe that plaintiff necessarily had to develop the same factual record every time it requested authorization to preserve this issue for this appeal.

In asserting its authority to exercise jurisdiction, defendant ruled that 1909 PA 144 is not unconstitutional as applied to plaintiff because the act does not discriminate against interstate commerce. True, the act does not discriminate. *Michigan Gas Storage v Public Service Comm,* 405 Mich 376, 398; 275 NW2d 457 (1979). However, even if a state statute does not discriminate, it will still be found unconstitutional if the area has been preempted by federal law[1] or if it violates the Commerce Clause. Because no one is arguing that the federal government has preempted the field, we will concentrate on the Commerce Clause argument.

A state may regulate local commerce even if the regulations affect interstate commerce. *Southern Pacific Co v Arizona ex rel Sullivan, Attorney General,* 325 US 761; 65 S Ct 1515; 89 L Ed 1915 (1945). In determining whether or not a state statute violates the Commerce Clause, this Court must balance the state's interests against the adverse effect on interstate commerce. *Bibb v Navajo Freight Lines, Inc,* 359 US 520; 79 S Ct 962; 3 L Ed 2d 1003 (1959). In fact, "the state legislation is invalid if it unduly burdens that commerce in matters where uniformity is necessary—necessary in the constitutional sense of accomplishing a permitted purpose. Where uniformity is essential for the functioning of commerce, a state may not interpose its local regulation." *Morgan v Virginia,*

---

[1] *E.g., Burbank v Lockheed Air Terminal, Inc,* 411 US 624; 93 S Ct 1854; 36 L Ed 2d 547 (1973); *Rice v Santa Fe Elevator Corp,* 311 US 218; 67 S Ct 1146; 91 L Ed 1447 (1947); *Great Lakes Transmission, supra.*

328 US 373, 377; 66 S Ct 1050; 90 L Ed 1317; 165 ALR 574 (1946) (footnotes omitted). See also *Simpson v Shepard,* 230 US 352; 33 S Ct 729; 57 L Ed 1511; 48 LRA (NS) 1151 (1913); *Cooley v Bd of Wardens of Port of Philadelphia,* 12 How 299; 13 L Ed 996 (1851).

The basic interests underlying 1909 PA 144 are substantial. They are to protect investors and rate payers. *Attorney General v Public Service Comm,* 412 Mich 385, 402; 316 NW2d 187 (1982); *Hillsdale Light & Fuel Co v Public Utilities Comm,* 220 Mich 101; 189 NW 893 (1922).

In *Michigan Gas, supra,* the Supreme Court upheld this act under a similar challenge. After stating that the act as applied in that case does not impede the flow of interstate commerce, it noted:

"The record contains no evidence that Storage Company has facilities or conducts business in any other state or that any of the gas it sells to its sole customer, Consumers Power Company, is ultimately consumed in any other state. Storage Company has suggested no reason for a need for national uniformity or that any other state would have any but the most remote interest in the securities of Storage Company." 405 Mich 398-399.

The plaintiff in that case was a corporation organized under Michigan laws and was a wholly owned subsidiary of Consumers Power Company, a Michigan public utility. The differences between the plaintiff in that case and in the present case are obvious.

In *Indiana & Michigan Power Co v Public Service Comm,* 405 Mich 400, 416; 275 NW2d 450 (1979), the Supreme Court again upheld the act as applied:

"The mere fact that a company is engaged in interstate commerce * * * does not foreclose the state from regulating some aspects of its operation. The states may continue to exercise their police powers over matters of local concern, even though the regulation affects interstate commerce, as long as the regulation does not impede the free flow of commerce."

However, the plaintiff in that case was a corporation organized solely to build the Donald E. Cook Nuclear Electric Generating Plant. Its principal office is in Michigan. The Supreme Court noted: "It will sell electric power to its parent which will take delivery at Power Company's plant, all within this state." 405 Mich 417. Again, the differences between the plaintiff in that case and in the present case are obvious.

Unlike the regulations in either *Michigan Gas* or *Indiana & Michigan Power,* the burden on commerce in the present case is substantial. First, despite the expedited procedure in this case, defendant necessarily took some time deciding whether or not to authorize the securities. This delay could disrupt plaintiff's activities. In order to finance its operations, plaintiff sells securities. Its decision when to sell the securities depends in large part on the prevailing interest rate. The interest rate could very easily change in the time between the request and the final authorization.

Second, requiring authorization before each issue costs plaintiff money. Defendant has claimed that the cost is only about $1,000 per issuance. However, plaintiff issues securities a number of times per year. If other states attempted to exercise jurisdiction and assess fees as well, the costs could add up. In *United Air Lines, Inc v Illinois Commerce Comm,* 32 Ill 2d 516; 207 NE2d 433 (1965), the Illinois Supreme Court ruled that Illi-

nois's statute allowing the plaintiff to issue stock only on the defendant's approval violates the Commerce Clause. At that time, the plaintiff serviced 32 states, the District of Columbia, and Canada. Eighty percent of its operations were interstate. It was organized as a Delaware corporation, but its principal office was in Illinois. The Court noted that the defendant's exercise of jurisdiction necessarily affects interstate activities, reasoning that if Illinois could authorize jurisdiction, the 16 other states where the plaintiff flies intrastate could also: "The task of seeking and gaining approval from such a number of States would be unjustifiably expensive, time consuming and burdensome, and could create delay which would directly impair the usefulness of United's facilities for interstate traffic." 32 Ill 2d 525. Then, after noting that each state would apply its own locally defined standards of public interest, the Court noted: "The result, we believe, would be chaotic. The issuance of securities is a single, indivisible act. It cannot be fractionalized in given portions allocated to specific States." *Id.*

Third, allowing defendant to exercise jurisdiction allows defendant to potentially disapprove a nationwide securities issue for reasons germain only to Michigan. In other words, even if the FCC and the SEC approve and even want plaintiff to issue securities for one reason or another, defendant would be able to veto that decision merely by refusing to authorize the securities. The disruptive potential is obvious. In *State ex rel Utilities Comm v Southern Bell Telephone & Telegraph Co,* 288 NC 201; 217 SE2d 543 (1975), the North Carolina Supreme Court held that the plaintiff had no right to exercise jurisdiction over the defendant, a wholly owned subsidiary of American Telephone &

Telegraph, a New York corporation. The defendant supplied services to Florida, Georgia, and South Carolina, in addition to North Carolina. It was regulated by the SEC; the other three states did not require approval. The Court stated: "Any requirement for prior approval, by its very nature contemplates that such approval may not be given. If the North Carolina Commission disapproves a proposed securities issue and the Georgia Commission approves it, Southern Bell is stymied, for it is put in an impossible position." 288 NC 212. In holding that the mere possibility for disapproval is sufficient to invalidate the statute as applied, the Court relied on *South Covington & Cincinnati Street R Co v City of Covington,* 235 US 537, 547-548; 35 S Ct 158; 59 L Ed 350 (1915):

"If Covington can regulate these matters, certainly Cincinnati can and interstate commerce might be impeded by conflicting and varying regulations in this respect, with which it might be impossible to comply. On one side of the river, one set of regulations might be enforced, and on the other side, quite a different set, and both seeking to control a practically continuous movement of cars. As was said in *Hall v DeCuir,* 95 US 48-85, 489; 24 L Ed 547, 548 [1877], 'commerce cannot flourish in the midst of such embarrassments'."

In the present case, plaintiff could be subject to regulations from 49 jurisdictions in addition to the FCC and the SEC, each making its decisions affecting plaintiff based on its own local standards. This possibility is too potentially disruptive to be constitutional: "The disapproval of an issuance could have ramifications throughout appellant's entire interstate operation as increased financing requirements become an ever-present reality." *Panhandle Eastern Pipeline Co v Public Utilities Comm,* 56

Ohio St 2d 334, 344; 10 Ohio Ops 3d 452; 383 NE2d 1163 (1978).

Actually, although generally the act's underlying interests are substantial, in this case, the "[l]ocal interests are only incidentally involved, if involved at all". *United Air Lines, Inc v Nebraska State Railway Comm,* 172 Neb 784, 796; 112 NW2d 414 (1961).[2] The percentage of plaintiff's business in Michgian is very small. Defendant has not shown that in this case protecting investors and rate payers has not been adequately accomplished by the FCC and the SEC. In balancing the state's interests against the adverse effects to interstate commerce, we conclude that applying 1909 PA 144 to plaintiff unduly and unconstitutionally burdens interstate commerce. Therefore, defendant has no constitutional right to exercise jurisdiction over plaintiff.

Reversed.

---

[2] In this case, the defendant had attempted to regulate the same stock issue as attempted in *United Air Lines, Inc v Illinois Commerce Comm, supra.* At that time, the plaintiff serviced only 23 states, the District of Columbia, and British Columbia. Only 1/1000 percent of its flights flew through Nebraska, 1/3 percent of its real and personal property was there, and less than 1 percent of its shareholders were Nebraska residents. In finding regulation unconstitutional, the Court said:

"To require an interstate carrier of the size and scope of operation as United to comply with [the statute] goes beyond the scope of a reasonable application of a sound legislative requirement. If Nebraska had power to make that requirement, then every other state where United operates could have like power. The result would be unjustifiably expensive, and near chaos in the keeping of accounts of such a carrier." 172 Neb 791-792.