INDIANA & MICHIGAN POWER COMPANY v PUBLIC SERVICE
COMMISSION

Docket No. 59197. Argued December 9, 1977 (Calendar No. 18).—
Decided February 5, 1979. Rehearing denied 406 Mich 1119.

Indiana & Michigan Power Company, a wholly-owned subsidiary
of Indiana & Michigan Electric Company, brought an action for
a refund of fees it paid to the Public Service Commission in
connection with an issuance of securities. The Court of Claims,
Julian E. Hughes, J., granted judgment for the plaintiff on the
ground that the Public Service Commission does not have
jurisdiction to regulate the issuance of securities by this plain-
tiff. The Court of Appeals, Bashara, P.J., and M. F. Cavanagh
and Anderson, JJ., affirmed (Docket No. 25395). Defendant
appeals. *Held:*

1. Securities regulation by the Public Service Commission
was not intended by the Legislature to be ancillary to regula-
tion of rates, services, and facilities. Regulation of the securities
of a public utility was intended to, and does, protect interests
which rate regulation alone could not effectively control. It
serves the interests of both the investors in, and creditors of, a
company organized and operating and issuing securities under
the laws of this state and those of ratepayers in efficient and
uninterrupted service at reasonable rates. There is no reason to
believe that the Legislature intended to reserve use of this
valuable tool for serving the public interest to cases where
rates are also being regulated while leaving some companies
free to issue securities without public participation. The statu-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 64 Am Jur 2d, Public Utilities §§ 240, 255-257.
[3] 26 Am Jur 2d, Electricity, Gas, and Steam §§ 10, 19.
64 Am Jur 2d, Public Utilities § 1.
[4, 5, 12] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair
Trade Practices § 431.
[6] 64 Am Jur 2d, Public Utilities § 307.
[7] 64 Am Jur 2d, Public Utilities § 231.
[8, 9] 64 Am Jur 2d, Public Utilities § 295.
[10, 11] 64 Am Jur 2d, Public Utilities § 303, 304.

tory language gives no indication of any such intent and the Court will not read limiting language into it.

2. The Congress, in enacting a Federal regulatory scheme applicable to the plaintiff, did not pre-empt state regulation of the plaintiff's security issuances. The provisions of the Federal Power Act concerning regulation of securities issued by a utility do not apply in this case because the plaintiff is a subsidiary of a company subject to regulation under the Public Utility Holding Company Act. In compliance with that act the plaintiff has filed with the Securities and Exchange Commission declarations concerning the issuance of the securities which have become effective by order of the SEC. The Public Utility Holding Company Act created concurrent jurisdiction in the Securities and Exchange Commission and the states to regulate utility companies like the plaintiff. It contains a clear expression of congressional intent not to remove from the states power over the securities of local subsidiary operating companies as exercised through the state public service commissions. State commissions have not been divested of all jurisdiction over the securities of these companies. Rather, a partnership of concurrent state-Federal control has been created. The applicable statutes assume the continued jurisdiction of a state commission over certain matters covered by the act, including the issuance of securities where a state legislature has granted regulatory authority to the commission. In light of a clear congressional intent not to place exclusive regulatory control of securities issuances like this one to the Securities and Exchange Commission, Public Service Commission jurisdiction over the issuance of securities has not been pre-empted by that act. Further, there was no congressional intent to pre-empt the states in this area in the Federal Power Act which granted rate jurisdiction to the Federal Power Commission.

3. The Federal Power Act grant of explicit authority to the Federal Power Commission to regulate the securities of electric companies within its jurisdiction was limited to those instances in which the companies are not organized and operating in a state under which their securities issues are regulated by a state commission. The legislative history of the congressional enactments indicates a purpose to extend Federal regulation to matters that could not be regulated by the states and also to exert Federal authority to strengthen and assist the states in the exercise of their regulatory powers and not to impair or diminish the proper powers of any state commissions.

4. The general test for determining whether a Federal statute has occupied an area to the exclusion of any action by the

states is not whether the two levels of regulation are both aimed at the same objective, the protection of utility ratepayers, but whether both regulations can be enforced without impairing the Federal superintendence of the field. Given the explicit congressional deference to state commission authority over companies organized and operating in that state, the Court is convinced that Congress recognized that state securities regulation would have some effect on Federal regulation of interstate rates and had no intent to eliminate that effect.

5. The Commerce Clause does not preclude the exercise of the defendant's regulatory authority over the plaintiff as an undue interference with commerce. Additionally, Congress, which has legislative authority over interstate commerce, has explicitly recognized and affirmed state jurisdiction in legislating in the area. The mere fact that a company is engaged in interstate commerce does not foreclose the state from regulating some aspects of its operations. The states may continue to exercise their police powers over matters of local concern, even though the regulation affects interstate commerce, so long as the regulation does not impede the free flow of commerce. Whether a state regulation unconstitutionally burdens commerce must be evaluated in light of the nature and extent of the burden that would be imposed and the state and national interests at stake. It has not been shown that any undue burden exists as a consequence of the type of regulation involved here. The plaintiff is organized under the laws of the state and will have all of its facilities and assets located in this state and will operate under the laws of this state. It will sell electric power to its parent which will take delivery at the plaintiff's plant, all within this state. The state has a very substantial interest in the issuance of securities under its laws by a company organized and operating here. On the other hand, it appears on the record in this case that electricity generated by the plaintiff may ultimately be transported to and consumed in other states. However, no other state appears to have jurisdiction over the plaintiff. The orders of the Securities and Exchange Commission allowing the plaintiff's declarations to become effective under the Public Utility Holding Company Act stated that no other state commission had jurisdiction. The Federal legislation in the area generally recognizes the state in which utilities are both organized and operating. In this situation the Court is convinced that no burden on the national interest will be created.

Reversed.

72 Mich App 398; 249 NW2d 429 (1976) reversed.

1. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES —
   REGULATION — STATUTES.

   Securities regulation by the Public Service Commission was not
   intended by the Legislature to be ancillary to regulation of
   rates, services, and facilities; the statutory language gives no
   indication of any such intent and the Supreme Court will not
   read limiting language into it (MCL 460.301; MSA 22.101).

2. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES —
   REGULATION — STATUTES.

   Regulation of the securities of a public utility was intended to,
   and does, protect interests which rate regulation alone could
   not effectively control, because it serves both the interests of
   investors in, and creditors of, a company organized and operat-
   ing and issuing securities under the laws of this state and the
   interests of ratepayers in efficient and uninterrupted service at
   reasonable rates; there is no reason to believe that the Legisla-
   ture intended to reserve use of this valuable tool for serving
   the public interest to cases where rates are also being regu-
   lated by the Public Service Commission while leaving some
   companies free to issue securities without public participation
   (MCL 460.301; MSA 22.101).

3. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES —
   REGULATION.

   A plaintiff corporation which was organized solely to acquire, to
   complete construction of, and to operate a nuclear generating
   plant and which will, upon commencement of operation of the
   generating plant, sell to its parent corporation, which is a
   public utility, all of the electric power generated at the plain-
   tiff's plant, is a public utility indirectly selling electricity to the
   public under the statute regulating the issuance of securities by
   a public utility (MCL 460.301; MSA 22.101).

4. PUBLIC SERVICE COMMISSIONS — PUBLIC UTILITY HOLDING COMPANY
   ACT — INTERSTATE COMMERCE — STATUTES — PRE-EMPTION.

   The Public Utility Holding Company Act created concurrent
   jurisdiction in the Securities and Exchange Commission and
   the states to regulate certain utility companies; it contains a
   clear expression of congressional intent not to remove from the
   states power over the securities of local subsidiary operating
   companies as exercised through the state public service com-
   missions; rather, a partnership of concurrent state-Federal
   control has been created (15 USC 79 *et seq.*).

5. PUBLIC SERVICE COMMISSIONS — PUBLIC UTILITY HOLDING COMPANY
   ACT — INTERSTATE COMMERCE — STATUTES — PRE-EMPTION.

   Public Service Commission jurisdiction over the issuance of secu-
   rities has not been pre-empted by the Public Utility Holding
   Company Act, in light of a clear congressional intent not to
   place exclusive regulatory control of such securities issuances
   in the Securities and Exchange Commission; the applicable
   statutes assume the continued jurisdiction of a state commis-
   sion over certain matters covered by the Public Utility Holding
   Company Act, including the issuance of securities where a state
   legislature has granted regulatory authority to the commission
   (15 USC 79 *et seq.;* MCL 460.301; MSA 22.101).

6. PUBLIC SERVICE COMMISSIONS — FEDERAL POWER ACT — STATUTES
   — PRE-EMPTION.

   The explicit authority granted in the Federal Power Act to the
   Federal Power Commission to regulate the securities of electric
   companies within its jurisdiction was limited to those instances
   in which the companies are not organized and operating in a
   state under which their securities issues are regulated by a
   state commission; the legislative history of the congressional
   enactments indicates a purpose to extend Federal regulation to
   matters that could not be regulated by the states and also to
   exert Federal authority to strengthen and assist the states in
   the exercise of their regulatory powers and not to impair or
   diminish the proper powers of any state commissions (16 USC
   791a *et seq.).*

7. COMMERCE — STATUTES — PRE-EMPTION — STATES.

   The general test for determining whether a Federal statute has
   occupied an area of regulation to the exclusion of any action by
   the states is not whether the two levels of regulation are both
   aimed at the same objective, *e.g.,* the protection of utility
   ratepayers, but whether both regulations can be enforced with-
   out impairing the Federal superintendence of the field.

8. PUBLIC SERVICE COMMISSIONS — FEDERAL POWER ACT — STATUTES
   — PRE-EMPTION.

   Congress recognized that state securities regulation would have
   some effect on Federal regulation of interstate utility rates and
   had no intent to eliminate that effect, given the explicit con-
   gressional deference to state public service commission author-
   ity over companies organized and operating in that state in the
   Federal Power Act (16 USC 791a *et seq.).*

9. PUBLIC SERVICE COMMISSIONS — FEDERAL POWER ACT — INTER-
STATE COMMERCE.

The Commerce Clause does not preclude the exercise of the
Public Service Commission's regulatory authority over a utility
company as an undue interference with commerce; addition-
ally, Congress, which has legislative authority over interstate
commerce, has explicitly recognized and affirmed state jurisdic-
tion in legislating in the area of securities issued by a public
utility (US Const, art I, § 8; MCL 460.301; MSA 22.101).

10. COMMERCE — INTERSTATE COMMERCE — STATUTES — CONSTITU-
TIONAL LAW.

The mere fact that a company is engaged in interstate commerce
does not foreclose the state from regulating some aspects of its
operations; the states may continue to exercise their police
powers over matters of local concern, even though the regula-
tion affects interstate commerce, so long as the regulation does
not impede the free flow of commerce (US Const, art I, § 8).

11. COMMERCE — INTERSTATE COMMERCE — STATUTES — CONSTITU-
TIONAL LAW.

Whether a state regulation unconstitutionally burdens commerce
must be evaluated in light of the nature and extent of the
burden that would be imposed and the state and national
interests at stake (US Const, art I, § 8).

12. PUBLIC SERVICE COMMISSIONS — SECURITIES — REGULATION —
INTERSTATE COMMERCE — STATUTES — CONSTITUTIONAL LAW.

It has not been shown that any undue burden on interstate
commerce exists as a consequence of the regulation of securi-
ties issued by a plaintiff corporation where the plaintiff is
organized under the laws of Michigan and will have all of its
facilities and assets located in this state and will operate under
the laws of this state; it will sell electric power to its parent
corporation which will take delivery at the plaintiff's plant, all
within this state; the state has a very substantial interest in
the issuance of securities under its laws by a company orga-
nized and operating here; electricity generated by the plaintiff
may ultimately be transported to and consumed in other states,
but no other state appears to have jurisdiction over the plain-
tiff; the orders of the Securities and Exchange Commission
allowing the plaintiff's declarations to become effective under
the Public Utility Holding Company Act stated that no other
state commission had jurisdiction; and the Federal legislation
in the area generally recognizes the state in which a utility is

both organized and operating (US Const, art I, § 8; 15 USC 79 *et seq.;* 16 USC 791a *et seq.;* MCL 460.301; MSA 22.101).

*Law Offices of Albert J. Thorburn* (by *Albert J. Thorburn* and *James R. Anderson)* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter V. Kron* and *Robert J. Taube,* Assistants Attorney General, for defendant.

RYAN, J. We granted leave in this case, together with *Michigan Gas Storage Co v Public Service Commission, ante,* 405 Mich 376; 275 NW2d 457 (1979), to determine whether the Michigan Public Service Commission may properly exercise jurisdiction over the securities of certain companies under MCL 460.301; MSA 22.101. In *Michigan Gas Storage* we held that jurisdiction did exist in the circumstances involved in that case and that it could properly be exercised. Although the Federal regulatory framework applicable to Indiana and Michigan Power Company (Power Company) is different from the one involved in that case, we reach the same conclusion and, accordingly, reverse the decision of the Court of Appeals.

I

Power Company is a corporation organized and existing under the laws of the State of Michigan, having its principal office in the state at the Donald C. Cook Nuclear Plant, Bridgman, Michigan.

The Michigan Public Service Commission (the Commission or PSC) is an administrative agency of the State of Michigan.

Power Company filed certain applications with

the Commission seeking approval or a disclaimer of jurisdiction of certain planned security issuances. The Commission approved the proposed transaction and ordered Power Company to pay to the State of Michigan the statutory fee prescribed by MCL 460.61; MSA 22.11.[1]

Seeking a refund of the security issuance fee, Power Company filed the instant suit in the Court of Claims on September 21, 1972. Power Company and the Commission entered into a stipulation of facts in the Court of Claims. The stipulation established that Power Company was organized solely to acquire, to complete construction of, and to operate the Donald C. Cook Nuclear Electric Generating Plant. To acquire and finance construction of the plant, the company was required to issue securities ·in substantial amounts. The aforementioned applications to the Commission were filed and the issuances were approved.

All of the outstanding capital stock in Power Company is owned by Indiana and Michigan Electric Company (Electric Company). Under a "power

---

[1] MCL 460.61; MSA 22.11 provides for the following statutory securities issuance fee:

"Whenever any stocks, bonds, notes or other evidences of indebtedness are authorized by the commission to be issued in accordance with any law of this state, the party or parties upon whose application said securities are authorized shall before the issuance or sale of said securities, pay into the treasury of the state of Michigan a sum equal to 1/10 of 1 per cent of the face value of the securities so authorized; the sum so paid not to be less than $50.00 in any case: Provided, That a minimum fee of $5.00 shall be paid by rural telephone companies with respect to the authorization to borrow money: Provided, however, That where the property upon which such stocks, bonds, notes or other securities are authorized to be issued, is located partly within and partly without the state of Michigan, then said fee shall be computed only in such an amount and on such proportion of the entire issue, as the amount of the property of such applicant actually located within the state of Michigan, bears to the total amount of the property upon which such securities are issued."

The total statutory fee for the applications filed in the instant case amounted to $431,500.

agreement" entered into between Power Company and Electric Company, Power Company will, upon commencement of operation of the generating plant, sell to Electric Company all of the electric power generated there. Electric Company will be Power Company's only customer and will receive delivery of the electricity at the site of the plant at Bridgman.

Power Company's parent, Electric Company, is a corporation organized under the laws of the State of Indiana and having its principal office in that state. It is engaged in the generation, purchase, transmission, distribution and sale of electricity at retail in the states of Michigan and Indiana. Electric Company is a public utility under the laws of both states, each of which regulates the rates of the company's retail sales within its borders.

Electric Company also sells electricity at wholesale for resale to other electric companies in Indiana, Michigan, Illinois and Ohio. These sales at wholesale for resale by Electric Company were subject to the exclusive regulatory jurisdiction of the Federal Power Commission (FPC) under the Federal Power Act, as amended, 16 USC 791a *et seq.* At the time this case was initiated, the FPC was the regulatory authority under the Federal Power Act. Under 42 USC 7101 *et seq.,* the Department of Energy Organization Act, the functions of the FPC were transferred to the Department of Energy and the Federal Energy Regulatory Commission. Under that act the FPC regulated Electric Company's wholesale rates and its services and facilities. In addition, the rates at which Electric Company purchases electricity from Power Company were also to be regulated by the FPC.

All of the outstanding stock of Electric Company is in turn owned by American Electric Power

Company, Inc. (American), a New York corporation with its principal place of business in New York City. American is a public utility holding company owning all of the common stock of various electric utility companies operating in the states of Ohio, Indiana, Michigan, Virginia, West Virginia, Kentucky and Tennessee. These subsidiaries are physically interconnected and are operated and coordinated as a single, integrated electric utility system. As a registered public utility holding company under the Public Utility Holding Company Act of 1935 (PUHCA), 15 USC 79 *et seq.*, American and its subsidiaries, including Power Company, are subject to the jurisdiction of the Securities and Exchange Commission. See the discussion, *infra.*

With respect to the security issues involved in this case, Power Company filed, in addition to the applications filed with the Public Service Commission, declarations (see the discussion, *infra)* with the SEC pursuant to § 6 of the PUHCA, 15 USC 79f. The SEC issued orders permitting the declarations to become effective.

Following the decision and orders of the Michigan Public Service Commission, Power Company paid the statutory issuance fees under protest and filed the instant suit.

On August 4, 1975, the Court of Claims entered a judgment granting a refund of $431,500 to Power Company. Appellants, State of Michigan and the Commission, appealed to the Court of Appeals which affirmed the decision of the Court of Claims. *Indiana & Michigan Power Co v Public Service Commission,* 72 Mich App 398; 249 NW2d 429 (1976).

We granted leave to appeal. 400 Mich 805 (1977).

II

As we stated in *Michigan Gas Storage, supra,* the Court of Appeals held in these two cases, as we read their opinions, "that the Michigan Legislature intended securities regulation in MCL 460.301; MSA 22.101 to be ancillary to the Commission's regulatory jurisdiction over rates, services and facilities pursuant to MCL 460.6; MSA 22.13(6)". 72 Mich App 398, 409.

In *Michigan Gas Storage* we stated that we did not so read the legislative intent. We reaffirm that opinion here.

Power Company readily admits that regulation of the securities issuances was motivated by the evils and injurious effects on the public of overcapitalization. It argues, however, as did Michigan Gas Storage Company in the related case, that the capital structure of the company is an essential element in its rate structure, that rate and securities regulation are inextricably tied together, and that the Legislature would not have intended to exercise jurisdiction over securities where it was not asserting similar authority over rates.

Briefly, we are convinced that securities regulation was intended to, and does, protect interests which rate regulation alone could not effectively control. It serves the interests of both the investors in, and creditors of, a company organized and operating and issuing securities under the laws of this state and those of ratepayers in efficient and uninterrupted service at reasonable rates. *People v County Transportation Co,* 303 NY 391; 103 NE2d 421 (1952), *app dis* 343 US 961 (1952). There is no reason to believe that the Legislature intended to reserve use of this valuable tool for serving the public interest to cases where rates are also being

regulated while leaving some companies free to issue securities without public participation. The statutory language gives no indication of any such intent and we will not read limiting language into it.

We also hold that Power Company, like Michigan Gas Storage Company, is a public utility indirectly selling electricity to the public.

### III

The next matter that must be considered is whether the Congress, in enacting a Federal regulatory scheme applicable to Power Company, preempted state regulation of Power Company's securities issuances. We believe that it did not.

As mentioned, Power Company, upon commencement of operations, will sell electricity only to Electric Company at wholesale for resale. In this setting, Power Company was subject to the jurisdiction of the FPC under the Federal Power Act. Under that act, the FPC was to exercise authority over Power Company's rates, service and facilities.

The Federal Power Act, unlike the Natural Gas Act, did contain explicit authority under which the FPC was authorized to regulate the securities of subject utilities where regulation by specified states does not exist.[2] Those provisions are not dispositive of the question before us, however, because the Federal Power Act also provides that the securities regulation provisions do not apply when the PUHCA applies,[3] as it does in this case.

Provisions of the PUHCA authorize, *inter alia,* the Securities and Exchange Commission to regulate the issuance and sale of securities by regis-

---

[2] 16 USC 824c.

[3] 16 USC 825q.

tered public utility holding companies and their subsidiaries. The Court of Appeals found, and we agree, that the PUHCA created concurrent regulatory jurisdiction in the SEC and the states over companies like Power Company. The Court then went on to express doubt whether Congress intended to allow the states to regulate securities where they do not regulate rates, a matter we will discuss, *infra.*

Briefly, the scheme of the PUHCA, with respect to securities issuances, is one which requires the approval of the SEC before a holding company or subsidiary company to which the securities provisions apply issues or sells its own securities or alters the priorities, preferences or powers attached to existing securities. 15 USC 79f. The procedure for acquiring the approval of the SEC requires the filing of a "declaration" with the Commission which may become "effective", thereby creating the condition necessary for the lawful issuance and sale of securities. 15 USC 79f, 79g.

As mentioned, *supra,* Power Company filed declarations with the SEC with respect to the issuances with which we are concerned here. The SEC issued orders permitting the declarations to become effective.

The holding company act also, we are convinced, contains a clear expression of congressional intent not to remove from the states power over the securities of local subsidiary operating companies as exercised through the state public service commissions. State commissions have not been divested of all jurisdiction over the securities of these companies. Rather, a partnership of concurrent state-Federal control has been created.

This intent is evidenced by a number of provisions of the statute.

First, 15 USC 79u provides in part:

"[N]or shall anything in this title affect the jurisdiction of any other commission, board, agency, or officer of the United States or of any State or political subdivision of any State, over any person, security, or contract, insofar as such jurisdiction does not conflict with any provision of this title or any rule, regulation or order thereunder."

Next, 15 USC 79g(g) requires that as a condition necessary to the effectiveness of a declaration, applicable state laws must be complied with:

"If a State commission or State securities commission, having jurisdiction over any of the acts enumerated in subsection (a) of section 6 [15 USC 79f(a)], shall inform the Commission, upon request by the Commission for an opinion or otherwise, that State laws applicable to the act in question have not been complied with, the Commission shall not permit a declaration regarding the act in question to become effective until and unless the Commission is satisfied that such compliance has been effected."

Finally, as discussed at length by the Court of Appeals, the PUHCA establishes an "exemption" from the provisions of 15 USC 79f, *supra,* which require an effective declaration before securities may be lawfully issued or sold, for subsidiary companies of registered holding companies where "the issue and sale of such security are solely for the purpose of financing the business of such subsidiary company and have been expressly authorized by the State commission of the State in which such subsidiary company is organized and doing business * * *".

Power Company urges that an exemption from the declaration requirements did not exist in this

case because an exemption must be applied for and no such application was filed for the securities issues concerned here. Instead, a declaration was filed and approved pursuant to the provisions of 15 USC 79g.

We agree with Power Company that there was no exemption here. None was applied for. We do disagree, however, with Power Company's suggestion that because the issuances have not been exempted and have been subject to thorough SEC regulation under 15 USC 79g, the Michigan Public Service Commission has been relieved of all authority with respect to issuance of its securities.

On the contrary, we believe the statutory provisions described above seek to preserve state regulatory authority in these matters. We do not believe there was any intent on the part of Congress to allow subsidiary operating companies to avoid state jurisdiction by simply choosing to file a declaration under 15 USC 79g. Indeed, that section assumes the continued jurisdiction of a state commission over matters covered by 15 USC 79f, including the issuance of securities where the state legislatures have granted regulatory authority to the commissions.

In light of what we believe is a clear congressional intent not to place exclusive regulatory control of securities issuances like the instant one to the SEC under the PUHCA, we conclude that Public Service Commission regulation in the instant case has not been preempted by that act. Further, we find no congressional intent to preempt the states in this area in the Federal Power Act which granted rate jurisdiction to the FPC. We discussed a similar argument at length in *Michigan Gas Storage, supra,* and rejected it.

As we have said, *supra,* the Federal Power Act

grant of explicit authority to the FPC to regulate the securities of electric companies within its jurisdiction was limited to those instances in which the companies are not organized and operating in a state under which their securities issues are regulated by a state commission.

As in the case of the Natural Gas Act, the legislative history of the congressional enactments indicates a purpose to extend Federal regulation to matters that could not be regulated by the states and also to exert Federal authority to strengthen and assist the states in the exercise of their regulatory powers and not to impair or diminish the proper powers of any state commissions. See *Jersey Central Power & Light Co v Federal Power Commission,* 319 US 61; 63 S Ct 953; 87 L Ed 1258 (1943); *Connecticut Light & Power Co v Federal Power Commission,* 324 US 515; 65 S Ct 749; 89 L Ed 1150 (1945). We believe the Federal statutory scheme and the history behind it strengthen that conclusion based upon application of the general test for determining whether a Federal statute has occupied an area to the exclusion of any action by the states. See *Florida Lime & Avocado Growers, Inc v Paul,* 373 US 132; 83 S Ct 1210; 10 L Ed 2d 248 (1963).

The issue is not, according to that case, as Power Company urges, whether the two levels of regulation are both aimed at the same objective, *viz:* the protection of utility ratepayers, but whether both regulations can be enforced without impairing the Federal superintendence of the field. Given the explicit statutory deference to state commission authority over companies organized and operating in that state, we are convinced that Congress recognized that state securities regulation would have some effect on Federal regulation of inter-

state rates and had no intent to eliminate that effect.

## IV

The final argument offered by Power Company against exercise of the regulatory authority of the Michigan Public Service Commission is that the Commerce Clause itself precludes it as an undue interference with commerce.

We reject this contention for the same reasons we did in *Michigan Gas Storage, supra,* and for the additional reason that Congress, which has legislative authority over interstate commerce, has explicitly recognized and affirmed state jurisdiction in legislating in the area. The mere fact that a company is engaged in interstate commerce, as we said in *Michigan Gas Storage,* does not foreclose the state from regulating some aspects of its operations. The states may continue to exercise their police powers over matters of local concern, even though the regulation affects interstate commerce, so long as the regulation does not impede the free flow of commerce. *Southern Pacific Company v Arizona,* 325 US 761; 65 S Ct 1515; 89 L Ed 1915 (1945). Whether a state regulation unconstitutionally burdens commerce must be evaluated in light of the nature and extent of the burden that would be imposed and the state and national interests at stake. *Id., Panhandle Eastern Pipe Line Co v Public Service Commission of Indiana,* 332 US 507; 68 S Ct 190; 92 L Ed 128 (1947); *People v County Transportation Co,* 303 NY 391; 103 NE2d 421 (1952), *app dis* 343 US 961 (1952).

As we said in *Michigan Gas Storage,* we do not believe any undue burden exists as a consequence of the type of regulation involved here. We are dealing with a company organized under the laws

of the state—one which will have all of its facilities and assets located in this state and one which operates under the laws of this state. It will sell electric power to its parent which will take delivery at Power Company's plant, all within this state. We believe the state has a very substantial interest in the issuance of securities under its laws by a company organized and operating here.

On the other hand, it appears on the record in this case, unlike the record in *Michigan Gas Storage,* that electricity generated by Power Company may ultimately be transported to and consumed in other states. Like the situation in that other case, however, no other state appears to have jurisdiction over Power Company. The orders of the Securities and Exchange Commission allowing Power Company's declarations to become effective under the PUHCA stated that no other state commission had jurisdiction. And, the Federal legislation in the area generally recognizes the state in which utilities are both organized and operating. In this situation we are convinced that no burden on the national interest will be created.

## V

In view of the foregoing, the decision of the Court of Appeals is reversed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.