MICHIGAN GAS STORAGE v PUBLIC SERVICE COMMISSION

Docket No. 59196. Argued December 9, 1977 (Calendar No. 17).—
Decided February 5, 1979. Rehearing denied 406 Mich 1119.

Michigan Gas Storage Company, a Michigan corporation, pe-
titioned the Public Service Commission for a determination
that the commission is without jurisdiction to regulate the
issuance of securities by a public utility or for an authorization
of the issuance of short-term securities. The Public Service
Commission found that it did have jurisdiction and authorized
the issuance of the securities. The Court of Appeals, Bashara,
P.J., and M. F. Cavanagh and Anderson, JJ., reversed (Docket
No. 25354). Defendant appeals. *Held:*

1. The language of the statute does not show that regulatory
jurisdiction over securities issuance by a public utility is ancil-
lary, to be invoked only where rates are also being regulated.
The Legislature has, in other provisions of statutes dealing
with public utilities, referred to other enactments that must
apply in order to make applicable a particular section of the
law. But the provision concerning the power of a public utility
to issue securities makes no reference to other activities of the
Public Service Commission. Indeed, the plain language of the
statute shows a legislative intent to apply its provisions to the
enumerated companies without condition. Regulation of securi-
ties of utility companies was intended to serve interests that
rate regulation alone might be inadequate to protect. Although
securities regulation and the attendant financial structure

REFERENCES FOR POINTS IN HEADNOTES
[1] 64 Am Jur 2d, Public Utilities §§ 240-243, 255, 256.
[2, 3] 64 Am Jur 2d, Public Utilities §§ 232, 255-263.
[4] 64 Am Jur 2d, Public Utilities §§ 240, 255.
[5] 64 Am Jur 2d, Public Utilities §§ 187, 323.
[6] 64 Am Jur 2d, Public Utilities § 255.
[7] 15A Am Jur 2d, Commerce § 14.
[8, 9, 11] 15A Am Jur 2d, Commerce § 26.
[10] 64 Am Jur 2d, Public Utilities §§ 231, 232.
[12, 14] 15A Am Jur 2d, Commerce § 30.
[13] 64 Am Jur 2d, Public Utilities § 232.
[15] 64 Am Jur 2d, Public Utilities § 256.

resulting from it will clearly have an effect on ratemaking, just as the issuance of securities without the approval of a regulatory authority would, securities regulation also serves valid legislative objectives even where the same regulatory agency is not exercising jurisdiction over utility rates. One of the goals of securities regulation is to protect investors against the dangers of over-capitalization. Proper evaluation of a proposed offering of securities will also affirmatively take into account the interests of the customers of the utilities, the ratepayers, as directed by statute. Proper securities regulation serves the interests of the ratepayers in assuring continued service without interruption and in receiving that service at reasonable rates. There is no reason to conclude that the Legislature would have intended to forego participation in regulating matters affecting interests with respect to which the state may properly exercise its protective powers because it is not also regulating other aspects of the business. Therefore, there is no basis for concluding that the Legislature intended the Public Service Commission to limit its exercise of jurisdiction over the issuance of securities to utility companies whose rates it also regulates.

2. The clear import of the language of the statute is to include a company like the plaintiff within the jurisdiction of the Public Service Commission in the regulation of securities by a corporation "exercising or claiming the right to carry or transport natural gas for public use". The plaintiff is a wholly owned subsidiary of Consumers Power Company, a public utility operating within Michigan. Pursuant to its articles of incorporation, the plaintiff sells natural gas only to its parent company, thereby conducting an integral part of the business of its parent of serving the people of the state.

3. These provisions of the statute were passed prior to the Federal Natural Gas Act, which asserts Federal regulatory jurisdiction over natural gas companies engaged in interstate commerce. Therefore, any contention that the Legislature did not intend the Public Service Commission to exert jurisdiction over securities where Federal law controls rates must be rejected. The regulatory scheme of the Federal Natural Gas Act was intended to fill the regulatory gaps in the state regulatory schemes but not to remove state power where it could be properly exercised. In view of the legislative history of the Federal act and the absence of explicit provision for the exercise of authority over securities issuances, an assertion of regulatory authority over the plaintiff's rates by the Federal Power Commission does not amount to an expression of a

design to displace an exercise of the state's police power that is otherwise proper under the Commerce Clause.

4. The test under the Commerce Clause for determining whether there is room for both state and Federal regulation is not whether the regulatory purposes of each are aimed at similar or different objectives, but, rather, whether the regulations of both can be enforced without impairing the Federal superintendence of the field. In general, Federal regulation of a field of commerce should not be deemed pre-emptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion or that the Congress has unmistakably so ordained. The Federal Power Commission apparently has exercised jurisdiction over the plaintiff's rates, service and facilities, but compliance with both the Federal Power Commission orders concerning rates and the Public Service Commission orders concerning the issuance of securities is neither impossible nor impractical. Finally, regulation of securities of a company like the plaintiff and the protection of investors in it is not a subject demanding exclusive Federal regulation to achieve uniformity vital to national interests, nor is it a subject by its very nature admitting only of national supervision.

5. The Commerce Clause, in conferring upon Congress power to regulate interstate commerce, did not wholly withhold from the states the power to regulate matters of local concern with respect to which Congress has not exercised its power, even though the regulation affects interstate commerce. A state may not, of course, impede the free flow of interstate commerce by discriminating against it in order to make local products more attractive, or imposing regulations that substantially interfere with the movement of commerce while at the same time affording only slight protection of local interests. The test, then, is one accomplished by balancing. It is necessary to determine first the nature and extent of the burden which the state regulation imposes and then weigh the state and national interests at stake. Assertion of regulatory jurisdiction by the Michigan Public Service Commission over the securities of the plaintiff does not offend the Commerce Clause. The statute granting authority over the security issuances of utility companies in no way discriminates against interstate commerce. It applies, on its face, to companies engaged in intrastate commerce as well as those engaged in interstate commerce. Moreover, the Court is convinced regulation does nothing to substantially impede the flow of interstate commerce. The state has clear and substantial interests in the regulation of the plain-

tiff's securities. It has a properly recognizable concern for investors in a utility organized and operating and issuing securities under the laws of this state. In addition, proper state regulation of and control over the securities and debt of the plaintiff will further the general interest of the citizens, who are the ultimate consumers of the natural gas stored and transported by the plaintiff, in efficient and reliable service. The national interests which will be affected by state regulation of the plaintiff's securities do not outweigh these legitimate concerns of the state. The record contains no evidence that the plaintiff has facilities or conducts business in any other state or that any of the gas it sells to its sole customer, Consumers Power Company, is ultimately consumed in any other state. The plaintiff has suggested no reason for a need for national uniformity or that any other state would have any but the most remote interest in the securities of the plaintiff. Therefore, any national interest in these securities does not, on this record, outweigh the state's interest.

Reversed.

72 Mich App 384; 249 NW2d 422 (1976) reversed.

1. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES — REGULATION — STATUTES.

The language of the statute concerning the power of the Public Service Commission to regulate securities does not show that the regulatory jurisdiction over securities issuance by a public utility is ancillary, to be invoked only where rates are also being regulated; indeed, the plain language of the statute shows a legislative intent to apply its provisions to the enumerated companies without condition (MCL 460.301; MSA 22.101).

2. PUBLIC SERVICE COMMISSIONS — SECURITIES — REGULATION — STATUTES.

Regulation of securities of utility companies was intended to serve interests that rate regulation alone might be inadequate to protect, although securities regulation and the attendant financial structure resulting from it will clearly have an effect on ratemaking; proper securities regulation serves the interests of the ratepayers in assuring continued service without interruption and in receiving that service at reasonable rates (MCL 460.301; MSA 22.101).

3. PUBLIC SERVICE COMMISSIONS — SECURITIES — REGULATION.

Proper evaluation of a proposed offering of securities by a public utility will affirmatively take into account the interests of the

customers of the utility, the ratepayers, as directed by statute (MCL 460.301; MSA 22.101).

4. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES — REGULATION — STATUTES.

There is no basis for concluding that the Legislature intended the Public Service Commission to limit its exercise of jurisdiction over the issuance of securities to utility companies whose rates it also regulates (MCL 460.301; MSA 22.101).

5. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES — REGULATION — NATURAL GAS — PUBLIC USE — WORDS AND PHRASES.

The clear import of the statute concerning the jurisdiction of the Public Service Commission in the regulation of securities issued by a corporation "exercising or claiming the right to carry or transport natural gas for public use" is to include a plaintiff corporation which is a wholly owned subsidiary of a public utility operating within Michigan where, pursuant to its articles of incorporation, the plaintiff sells natural gas only to its parent company, thereby conducting an integral part of the business of its parent of serving the people of the state (MCL 460.301; MSA 22.101).

6. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES — STATUTES.

The provisions of the statute granting the Public Service Commission jurisdiction to regulate securities issued by public utilities were passed prior to the Federal Natural Gas Act, which asserts Federal regulatory jurisdiction over natural gas companies engaged in interstate commerce; therefore, any contention that the Legislature did not intend the Public Service Commission to exert jurisdiction over securities where Federal law controls rates must be rejected (15 USC 717 *et seq.;* MCL 460.301; MSA 22.101).

7. COMMERCE — FEDERAL NATURAL GAS ACT — STATUTES — COMMERCE CLAUSE.

The regulatory scheme of the Federal Natural Gas Act was intended to fill gaps in the state regulatory schemes but not to remove state power where it could be properly exercised; Congress did not intend to pre-empt the states from regulating the securities of companies engaged in the transportation or sale for resale of gas in interstate commerce (US Const, art I, § 8; 15 USC 717 *et seq.;* MCL 460.301; MSA 22.101).

8. COMMERCE — INTERSTATE COMMERCE — STATUTES — PRE-EMPTION.

The test under the Commerce Clause for determining whether there is room for both state and Federal regulation in a specific area is not whether the regulatory purposes of each are aimed at similar or different objectives, but, rather, whether the regulations of both can be enforced without impairing the Federal superintendence of the field (US Const, art I, § 8).

9. COMMERCE — INTERSTATE COMMERCE — STATUTES — PRE-EMPTION.

Federal regulation of a field of commerce, in general, should not be deemed pre-emptive of state regulatory power in the absence of persuasive reasons, either that the nature of the regulated subject matter permits no other conclusion or that the Congress has unmistakably so ordained (US Const, art I, § 8).

10. PUBLIC SERVICE COMMISSIONS — FEDERAL POWER COMMISSION — INTERSTATE COMMERCE — STATUTES — PRE-EMPTION.

Compliance with both Federal Power Commission orders concerning rates and Public Service Commission orders concerning the issuance of securities of a public utility engaged in the transportation and sale of gas is neither impossible nor impractical; furthermore, regulation of securities of a public utility company and the protection of investors in it is not a subject demanding exclusive Federal regulation to achieve uniformity vital to national interests, nor is it a subject by its very nature admitting only of national supervision (US Const, art I, § 8; 15 USC 717 et seq.; MCL 460.301; MSA 22.101).

11. COMMERCE — INTERSTATE COMMERCE — STATUTES — PRE-EMPTION.

The Commerce Clause, in conferring upon Congress power to regulate interstate commerce, did not wholly withhold from the states the power to regulate matters of local concern with respect to which Congress has not exercised its power, even though the regulation affects interstate commerce (US Const, art I, § 8).

12. COMMERCE — INTERSTATE COMMERCE — STATUTES — PRE-EMPTION.

A state may not impede the free flow of interstate commerce by discriminating against it in order to make local products more attractive, or imposing regulations that substantially interfere with the movement of commerce while at the same time affording only slight protection of local interests; the test is one accomplished by balancing which determines first the nature and extent of the burden which the state regulation imposes and then weighs the state and national interests at stake (US Const, art I, § 8).

13. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES —
   REGULATION — INTERSTATE COMMERCE.

   Assertion of regulatory jurisdiction by the Michigan Public Ser-
   vice Commission over the securities of a utility company does
   not offend the Commerce Clause where the record does not
   show that the utility company has facilities or conducts busi-
   ness in any other state nor that any of the gas it sells to its sole
   customer, its parent public utility company, is ultimately con-
   sumed in any other state (US Const, art I, § 8; MCL 460.301;
   MSA 22.101).

14. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES —
   REGULATION — INTERSTATE COMMERCE.

   The statute granting the Public Service Commission authority
   over the security issuances of utility companies in no way
   discriminates against interstate commerce because it applies,
   on its face, to companies engaged in intrastate commerce as
   well as those engaged in interstate commerce; moreover, regu-
   lation does nothing to substantially impede the flow of inter-
   state commerce (US Const, art I, § 8; MCL 460.301; MSA
   22.101).

15. PUBLIC SERVICE COMMISSIONS — JURISDICTION — SECURITIES —
   REGULATION — INTERSTATE COMMERCE.

   The state has clear and substantial interests in the regulation of
   a utility company's securities because it has a properly recog-
   nizable concern for investors in a utility organized and operat-
   ing and issuing securities under the laws of the state, and
   proper state regulation of and control over the securities and
   debt of the utility company will further the general interest of
   the citizens, who are the ultimate consumers of the natural gas
   stored and transported by it, in efficient and reliable service;
   the national interests which will be affected by state regulation
   of the utility company's securities do not outweigh these legiti-
   mate concerns of the state where the record contains no evi-
   dence that the utility has facilities or conducts business in any
   other state or that any of the gas it sells to its sole customer,
   another utility company, is ultimately consumed in any other
   state, and the utility company has suggested no reason for a
   need for national uniformity or that any other state would
   have any but the most remote interest in the securities (US
   Const, art I, § 8; MCL 460.301; MSA 22.101).

*Law Offices of Albert J. Thorburn* (by *Albert J.*

*Thorburn* and *James R. Anderson)* and *David A. Mikelonis* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter V. Kron* and *Robert J. Taube,* Assistants Attorney General, for defendant.

RYAN, J. The Michigan Public Service Commission (the Commission or PSC), an administrative agency of the State of Michigan, pursuant to MCL 460.301; MSA 22.101,[1] possesses the authority to regulate the security issuances of certain companies.

On March 11, 1974, appellant Michigan Gas

[1] MCL 460.301; MSA 22.101 provides in relevant part:

"Sec. 1. Any corporation or association except municipal corporations, organized and existing, or which may hereafter be organized or authorized to do business under the laws of this state, or any lessee or trustee thereof, or any person or persons owning, conducting, managing, operating or controlling any plant or equipment within this state used wholly or in part in the business of transmitting messages by telephone or telegraph, producing or furnishing heat, artificial gas, light, water or mechanical power to the public, directly or indirectly, and any railroad, interurban railroad or other common carrier, or any corporation, association, or individual exercising or claiming the right to carry or transport natural gas for public use, directly or indirectly, or petroleum oil by or through pipe line or lines or engaged in the business of piping or transporting natural gas for public use, directly or indirectly, or engaged in the business of purchasing natural gas for distribution may issue stocks, bonds, notes or other evidences of indebtedness payable at periods of more than 12 months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities or for the improvement or maintenance of service or for the discharge or lawful refunding of obligations and may issue stock to represent accumulated earnings invested in capital assets and not previously capitalized: Provided, and not otherwise, That there shall have been secured from the Michigan railroad commission an order authorizing such issue and the amount thereof, and stating that in the opinion of the commission the use of the capital or property to be acquired to be secured by the issue of such stock, bonds, notes or other evidences of indebtedness, is reasonably required for the purposes of such person, corporation or association, or that the issue of such stock fairly represents accumulated and undistributed earnings invested in capital assets and not previously capitalized."

Storage Company (Storage Company) filed an application for disclaimer of jurisdiction or, in the alternative, application under protest for authorization to issue securities with the Commission. Storage Company sought either a determination that the Commission was without authority to regulate its security issuances or, in the event the Commission declined to disclaim jurisdiction, approval of the proposed securities issuance.

Public hearing on the application was held on March 29, 1974. Evidence adduced at the hearing by Storage Company established that it is a corporation organized and existing under the laws of the State of Michigan and is a wholly owned subsidiary of Consumers Power Company.

As authorized by its articles of incorporation, Storage Company is engaged in the purchase and transportation of natural gas in interstate commerce and the sale of such gas at wholesale for resale for ultimate public consumption. Storage Company purchases its natural gas supply from Panhandle Eastern Pipe Line Company and sells it to its sole customer, Consumers Power Company. Consumers Power Company is a public utility which operates in the State of Michigan and sells gas at retail to the public for domestic, commercial and industrial use.

As a natural gas company transporting and selling gas in interstate commerce, the operation of Storage Company was within the jurisdiction of the Federal Power Commission (FPC) under the regulatory powers granted in the Natural Gas Act, 15 USC 717 *et seq.* At the time this case was initiated, the Federal Power Commission was the regulatory authority under the Federal Power Act. Under 42 USC 7101 *et seq.,* the Department of Energy Organization Act, the functions of the FPC

were transferred to the Department of Energy and the Federal Energy Regulatory Commission.

With respect to the securities proposed to be issued in this case, Storage Company had applied neither to the Federal Power Commission, Securities and Exchange Commission or any state regulatory commission for approval prior to the March hearing. The issuance, the borrowing of $7,500,000 in exchange for Storage Company's unsecured note to refinance a note for the same amount, was scheduled to take place on April 30, 1974, the due date for the expiring note. Storage Company had, however, filed an application with the FPC on February 15, 1974, seeking approval of a requested rate change to cover the increased costs that would be incurred as a result of the terms of the refinancing.

On April 15, 1974, the Commission issued its decision and order denying Storage Company's request for disclaimer of jurisdiction and authorized the proposed issuance. Storage Company had previously paid, under protest, the applicable security issuance fee of $7,500.[2]

---

[2] If the Commission has jurisdiction over the issuance of securities, Storage Company is liable for the fee provided in MCL 460.61; MSA 22.11 as follows:

"Sec 11. Whenever any stocks, bonds, notes or other evidences of indebtedness are authorized by the commission to be issued in accordance with any law of this state, the party or parties upon whose application said securities are authorized shall before the issuance or sale of said securities, pay into the treasury of the state of Michigan a sum equal to 1/10 of 1 per cent of the face value of the securities so authorized; the sum so paid not to be less than $50.00 in any case: Provided, That a minimum fee of $5.00 shall be paid by rural telephone companies with respect to the authorization to borrow money: Provided, however, That where the property upon which such stocks, bonds, notes or other securities are authorized to be issued, is located partly within and partly without the state of Michigan, then said fee shall be computed only in such an amount and on such proportion of the entire issue, as the amount of the property of such applicant actually located within the state of Michigan, bears to the total amount of the property upon which such securities are issued."

Storage Company's application for rehearing was denied by the Commission on July 28, 1975.

Leave to appeal was granted by the Court of Appeals. The case was consolidated for hearing and argument with *Indiana & Michigan Power Co v Public Service Commission, post,* 405 Mich 400; 275 NW2d 450 (1979). In an opinion issued November 22, 1976, the Court of Appeals reversed, holding that the Commission was without jurisdiction to regulate the securities issuances of Storage Company and ordered the refund of the statutory issuance fee. 72 Mich App 384; 249 NW2d 422 (1976).

The Court of Appeals, after reviewing the regulatory structure applicable to Storage Company, concluded that securities regulation under MCL 460.301; MSA 22.101 "is ancillary to the Commission's general power to control rates, services, and facilities".

We granted leave to appeal and also consolidated the case for hearing with *Indiana & Michigan Power Co, supra,* in which leave was also granted. 400 Mich 805 (1977).

The sole issue before the Court is whether the PSC may exercise any regulatory authority over the securities of Storage Company. We hold that it may.

I

We believe some exposition of our understanding of the regulatory framework will assist in setting the issues in perspective. At the outset, we must agree with the Court of Appeals that the record in this case is indeed sparse. As that Court noted, Storage Company, the moving party, bears the burden of producing sufficient evidence on which a

conclusion of lack of jurisdiction can be based. The company claimed below that the record was sufficient to decide the jurisdictional issue.

As established at the hearing, it appears that Storage Company's operations consist of the purchase, transportation, storage and sale of natural gas. The Company's supply of gas is purchased from an interstate pipe line company. All of that gas is then sold to Consumers Power Company which owns all of the outstanding stock in Storage Company. There is no evidence in the record that Storage Company owns any facilities or significant assets that are located outside the state. Nor is there any evidence whether, or how much, if any, of the gas sold to Consumers is ultimately consumed outside the state.

As a company engaged in the purchase and transportation of natural gas acquired from an interstate pipe line, which gas is sold at wholesale for resale, Storage Company is subject to the provisions of the Federal National Gas Act, *supra*. Under that act the Federal Power Commission exercised regulatory authority over Storage Company's rates, services and facilities. The Michigan Public Service Commission does not assert jurisdiction over these aspects of the Company's activities.[3]

---

[3] The Court of Appeals concluded that under the "Hinshaw Amendment" to the Natural Gas Act, 15 USC 717(c), a provision added to the Natural Gas Act in 1954, the Michigan Public Service Commission *could* regulate the rates, services and facilities of Storage Company. Under that section of the Natural Gas Act, an exemption from the provisions of the act is granted for companies that receive interstate gas within the state or at its border, provided that all the gas is ultimately consumed within the state and that the rates, services and facilities of those companies are regulated by a state commission. Specifically, that section provides:

"(c) The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at

## II

The holding of the Court of Appeals, as we read that court's opinion, was based on its determination that the Legislature intended securities regulation of utility companies to be ancillary to rate regulation and that therefore no jurisdiction would exist for the Commission to regulate the securities of a company whose rates were not also being regulated by the Commission.

Relying on the decision of another panel of the Court of Appeals in *Great Lakes Transmission Co v Michigan Public Service Commission,* 24 Mich App 77; 180 NW2d 59 (1970), the Court below opined:

"The very standards which the Commission must use in MCL 460.301; MSA 22.101 require the exercise of judgment as to whether use of the capital involved is 'reasonably required for the purposes of such * * * corporation'. * * * These judgments necessarily involve consideration of the propriety of Storage Company's rates, services, and facilities. As this Court recognized in *Great Lakes Transmission Co, supra,* the capitalization of a company is integrally related to its rates of

the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States. A certification from such State commission to the Federal Power Commission that such State commission has regulatory jurisdiction over rates and service of such person and facilities and is exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction."

The Court of Appeals found Storage Company to be a person engaged in the requisite commerce in gas ultimately consumed within the state that was not, however, being regulated in the enumerated respects by the Public Service Commission. As that Court described the situation, the Commission has acquiesced in regulation by the Federal authority.

return and financial status, and in turn must have a direct bearing on the rates set by the agency in oversight. It would be at cross purposes to the legislative schemes of both this state and the Congress to split the authority over rates and securities issuances." 72 Mich App 384, 396.

Although the Court's opinion mentions concern for the effects state securities regulation might have on Federal authority over rates, its holding rests on state law grounds.[4]

We do not agree with the Court of Appeals reading of the legislative intent.

Putting aside for the moment the problems presented by Federal regulation of rates, services and facilities and the impact of the Commerce Clause of the United States Constitution, we see no basis for concluding that the Legislature intended securities to be regulated only where rates were also being regulated.

First, there is no indication in the language of the statute that regulatory jurisdiction over securities issuances was to be invoked only where rates were also being regulated. The Legislature has, in other provisions of statutes dealing with public utilities, referred to other enactments that must apply in order to trigger applicability of a particular section of the law. The most obvious example in the statutory provisions we are concerned with

---

[4] In the companion case of *Indiana & Michigan Power Co v Public Service Commission,* 72 Mich App 398; 249 NW2d 429 (1976), involving a similar issue under a different scheme of Federal regulation, the Court of Appeals made it clear that its holding in both cases was grounded in state law. It said:

"A preemption holding is unnecessary, for we find, as in *Michigan Gas Storage Co v Public Service Commission,* that the Michigan Legislature intended securities regulation in MCL 460.301; MSA 22.101 to be ancillary to the Commission's regulatory jurisdiction over rates, services and facilities pursuant to MCL 460.6; MSA 22.13(6)." 72 Mich App 398, 408-409.

is the section levying the security issuance fee. It recites "[w]henever any [securities] * * * are authorized to be issued in accordance with any law of this state", MCL 460.61; MSA 22.11. MCL 460.301; MSA 22.101 makes no similar reference to other activities of the Commission.

Indeed, the plain language of the statute evinces a legislative intent to apply its provisions to the enumerated companies without condition. We are hesitant to read language into the statute which the Legislature, for its own reasons, chose not to use.

Moreover, we are convinced that the regulation of securities of utility companies was intended to serve interests that rate regulation alone might be inadequate to protect.

As the portion of its opinion quoted *supra* indicates, the Court of Appeals viewed securities regulation as being complementary to rate regulation and concluded that the Legislature would not choose to regulate securities where it did not assert similar authority over rates.

While we agree that securities regulation and the attendant financial structure resulting from it will clearly have an effect on ratemaking just as the issuance of securities without the approval of a regulatory authority would, we are convinced that securities regulation serves valid legislative objectives even where the same authority is not exercising jurisdiction over rates.

In *Peninsular Power Co v Secretary of State*, 169 Mich 595; 135 NW 656 (1912), we identified one of the goals of securities regulation when we said that the plain purpose of the statute was to protect investors against the evils of overcapitalization. See, also, *Hillsdale Light & Fuel Co v Michigan Public Utilities Commission*, 220 Mich

101; 189 NW 893 (1922). We think appellee Storage Company is correct in its argument that proper evaluation of a proposed offering of securities will also affirmatively take into account the interests of the customers of the utilities, the ratepayers, as directed by statute.[5] Proper securities regulation serves the interests of the ratepayers in assuring continued service without interruption from utilities and in receiving that service at reasonable rates. For example, physical property of a company within the state, essential to the company's ultimate service to the public, could be jeopardized by inadequate financing, resulting in a failure in that service. We see no reason to conclude that the Legislature would have intended to forego participation in regulating matters affecting interests with respect to which the state may properly exercise its protective powers because it is not also regulating other aspects of the business.

In sum, we can find nothing in the language of MCL 460.301; MSA 22.101 or in logic to require the conclusion that the Legislature intended the Public Service Commission to limit the exercise of jurisdiction over the issuance of securities to utility companies whose rates it also regulates.

## III

Storage Company makes an additional argument that, based on the language of MCL 460.301; MSA 22.101, the Commission does not have jurisdiction over its securities. The Company urges that it is not a public utility for state law purposes because the Commission does not exercise jurisdiction over

---

[5] For example, securities are to be authorized to be issued when necessary, *inter alia,* for the construction of facilities or for the maintenance or improvement of service and should not be issued if overcapitalization would result.

its rates and, more specifically, that it is not "[a] corporation * * * exercising or claiming the right to carry or transport natural gas for public use, directly or indirectly * * *".

It suffices to say that we agree with the Court of Appeals that the clear import of the language of the statute is to include a company like Storage Company. It is a wholly owned subsidiary of a utility operating within the state and, pursuant to its articles of incorporation, it sells gas only to that company, thereby conducting an integral part of the business of its parent of serving the people of this state.

We hold that Storage Company is within the jurisdiction of the Commission granted by MCL 460.301; MSA 22.101.

## IV

It is next suggested that state regulation of securities issues was either not intended to occur where authority over rates and other matters is exercised by a Federal regulatory agency or may not occur because of the concurrent exercise of power by the Federal agency. The Court of Appeals expressed doubts that such regulation would be consistent with the state and congressional legislative schemes.

We must first reject any contention that the Legislature did not intend authority over securities to be exerted where Federal law controls rates. The provisions we are concerned with were passed prior to the Federal Natural Gas Act, *supra,* which asserted Federal regulatory jurisdiction over natural gas companies engaged in interstate commerce.

Nor do we believe that the Natural Gas Act has

occupied the field of securities regulation so as to preempt state action in the area that does not otherwise conflict with Federal law or the Commerce Clause, a problem we will consider *infra* in Part V.

Some understanding of the genesis of Federal regulatory jurisdiction under the Natural Gas Act is helpful in dealing with the issue of preemption. The United States Supreme Court has described the scope of the act as follows:

"In § 1(b) of the Act, '[t]hree things and three only Congress drew within its own regulatory power, delegated by the Act to its agent, the Federal Power Commission. These were: (1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale.' *Panhandle Eastern Pipe Line Co v Public Service Commission of Indiana,* 332 US [507, 516; 68 S Ct 190; 92 L Ed 128 (1947)]. Each of these is an independent grant of jurisdiction * * *. *Federal Power Commission v East Ohio Gas Co,* 338 US 464 [70 S Ct 266; 94 L Ed 268] (1950)." *Federal Power Commission v Louisiana Power & Light Co,* 406 US 621; 92 S Ct 1827; 32 L Ed 2d 369 (1972).

Enactment by Congress of legislation establishing Federal regulation of natural gas companies was motivated by the inability of the regulatory powers of the states to reach important aspects of what was becoming a nationally powerful and vital industry. Court decisions had made it clear that the states were generally without power to regulate rates of sales of gas for resale, usually to distributing companies, regardless of the character of ultimate use. *Panhandle Eastern Pipe Line Co, supra.* In addition, comprehensive and equitable distribution plans for gas transported in interstate commerce are practically beyond the competence

of state regulatory agencies. *Louisiana Power & Light Co, supra.*

The goal of the legislation, then, was to occupy a particular field. "But it was meticulous to take in only territory which this Court had held the states could not reach." *Panhandle Eastern Pipe Line Co,* 332 US 507, 519. "Congress meant to create a comprehensive and effective regulatory scheme, complementary in its operation to those of the states and in no manner usurping their authority [citations omitted]." *Id.,* 332 US 507, 520.

In other words, the cases have repeatedly held that in enacting the Natural Gas Act, Congress intended to fill regulatory "gaps" and did not have as an object the removal of state power where it could be properly exercised.[6]

In light of this background, we believe it is quite significant that the Natural Gas Act did not give the Federal Power Commission explicit authority to regulate the securities issuances of natural gas companies. Indeed,

"[b]ills recommended by the [Federal Power] Commission to regulate the issuance of securities by 'natural gas companies' (as well as other persons seeking funds for the construction, acquisition or operation of any facility for which a certificate of public convenience and

---

[6] In *Louisiana Power & Light Co, supra,* the Court said:

"This congressional blueprint has guided judicial interpretation of the broad language defining FPC jurisdiction, and

" 'when a dispute arises over whether a given transaction is within the scope of federal or state regulatory authority, we are not inclined to approach the problem negatively, thus raising the possibility that a "no man's land" will be created. Compare *Guss v Utah Labor Relations Board,* 353 US 1 [77 S Ct 598; 1 L Ed 2d 601 (1957)]. That is to say, in a borderline case where congressional authority is not explicit we must ask whether state authority can practicably regulate a given area and, if we find that it cannot, then we are impelled to decide that federal authority governs.' *Federal Power Commission v Transcontinental Gas Pipe Line Corp* [365 US 1, 19-20; 81 S Ct 435; 5 L Ed 2d 377 (1961)]."

necessity is required under the Natural Gas Act) were introduced in 1949 and 1955, but were not reported out of committee [footnote omitted]." 1 Loss, Securities Regulation (2d ed), p 426.

As mentioned, officials of Storage Company testified that no other applications were filed for approval of the security issue with which this case is concerned.

In view of the foregoing, we conclude that Congress did not intend, in enacting the Natural Gas Act, to preempt the states from regulating the securities of companies like Storage Company.

The test for determining whether there is room for both state and Federal regulation in a specific area is not whether the regulatory purposes of each are aimed at similar or different objectives, but rather whether the regulations of both can be enforced without impairing the Federal superintendence of the field. *Florida Lime & Avocado Growers, Inc v Paul,* 373 US 132; 83 S Ct 1210; 10 L Ed 2d 248 (1963). In general, Federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion or that the Congress has unmistakably so ordained. *Id.*

The Federal Power Commission exercised no explicit authority over the issuance of Storage Company's securities. It did, however, exercise jurisdiction over its rates, service and facilities.

This is not, we are convinced, a situation in which compliance with both regulations is a practical impossibility. The Federal regulatory authority apparently has and is exercising authority over Storage Company's rates. As we have said before, we have no doubt that the Michigan Public Ser-

vice Commission's activities with respect to Storage Company's securities may have some impact upon its rates, just as application of workers' compensation laws or permissible state regulation of direct retail sales to consumers by utility companies that make both retail and wholesale sales do. But compliance with both the PSC's orders and those of the FPC concerning rates was neither impossible nor impractical.

Second, in view of the legislative history of the Federal act and the absence therein of explicit provision for the exercise of authority over securities issuances, we do not find an assertion of congressional authority over Storage Company's rates to amount to an expression of a design to displace an exercise of the state's police power that is otherwise properly exercised under the Commerce Clause (Part V, *infra).* See *Head v New Mexico Board of Examiners in Optometry,* 374 US 424; 83 S Ct 1759; 10 L Ed 2d 983 (1963); *Rice v Santa Fe Elevator Corp,* 331 US 218; 67 S Ct 1146; 91 L Ed 1447 (1947).

Indeed, we believe it to be unlikely in the extreme that Congress intended the enactment of rate regulation for companies like Storage Company to be understood to preclude the valid exercise of state authority over securities. The purpose of the Natural Gas Act was to fill gaps in the regulation of utility companies, not to create them. If the state does not regulate this security issuance by Storage Company, no authority would.

Finally, regulation of securities of a company like Storage Company and the protection of investors in it is not a subject demanding exclusive Federal regulation to achieve uniformity vital to national interests, *Florida Lime & Avocado Growers, Inc, supra,* nor is it a subject by its very nature admitting only of national supervision. *Id.*

V

The appellant's final challenge to the Commission's attempt to regulate the securities of the company is the claim that the Commerce Clause of the United States Constitution forbids it. The Court of Appeals found that state regulation would not violate the Commerce Clause.

At the outset, we must reject appellee's suggestion that because Storage Company sells natural gas solely in interstate commerce, the state is thereby powerless to regulate any aspect of its activities. It has been held repeatedly that the Commerce Clause, in conferring upon Congress power to regulate commerce, did not wholly withhold from the states the power to regulate matters of local concern with respect to which Congress has not exercised its power, even though the regulation affects interstate commerce. *California v Thompson,* 313 US 109; 61 S Ct 930; 85 L Ed 1219 (1941); *New Mexico Board of Examiners, supra; Southern Pacific Co v Arizona ex rel Sullivan, Attorney General,* 325 US 761; 65 S Ct 1515; 89 L Ed 1915 (1945).

A state may not, of course, impede the free flow of interstate commerce by discriminating against it in order to make local products more attractive, or imposing regulations that substantially interfere with the movement of commerce while at the same time affording only slight protection of local interests. *Southern Pacific Co, supra.* The test, then, is one accomplished by balancing. It is necessary to determine first the nature and extent of the burden which the state regulation imposes and then weigh the state and national interests at stake. *Id., People v County Transportation Co,* 303 NY 391; 103 NE2d 421 (1952), *app dis* 343 US 961

(1952); *United Airlines, Inc v Illinois Commerce Commission,* 32 Ill 2d 516; 207 NE2d 433 (1965); *Panhandle Eastern Pipe Line Co, supra.*

We are convinced that assertion of regulatory jurisdiction by the Michigan Public Service Commission over the securities of Storage Company does not offend the Commerce Clause.

The statute granting authority over the security issuances of utility companies in no way discriminates against interstate commerce. *Cf. Polar Ice Cream & Creamery Co v Andrews,* 375 US 361; 84 S Ct 378; 11 L Ed 2d 389 (1964). It applies, on its face, to companies engaged in intrastate commerce as well as those engaged in interstate commerce.

Moreover, we are convinced regulation does nothing to substantially impede the flow of interstate commerce. The cases cited by Storage Company all concern regulation of the rates at which particular interstate sales by utility companies are made.

As we have said above, the state has clear and substantial interests in the regulation of Storage Company's securities. It has a properly recognizable concern for investors in a utility organized and operating and issuing securities under the laws of this state. In addition, proper state regulation of and control over the securities and debt of Storage Company will further the general interest of the citizenry who are ultimate consumers of gas stored and transported by Storage Company in efficient and reliable service. *People v County Transportation Co, supra.*

We do not believe the national interests which will be affected by state regulation of Storage Company's securities outweigh these legitimate concerns of the state. The record contains no evidence that Storage Company has facilities or

conducts business in any other state or that any of the gas it sells to its sole customer, Consumers Power Company, is ultimately consumed in any other state. Storage Company has suggested no reason for a need for national uniformity or that any other state would have any but the most remote interest in the securities of Storage Company.

We conclude, therefore, that any national interest in Storage Company's securities does not, on this record, outweigh the state's interest.

## VI

In sum, we hold that the Michigan Public Service Commission may, under MCL 460.301; MSA 22.101, properly exercise jurisdiction over the securities issuances of Storage Company.

Accordingly, the decision of the Court of Appeals is reversed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.